**Hilary KOPROWSKI, M.D.**

v.

**The WISTAR INSTITUTE OF ANATOMY AND BIOLOGY, et al.**

**Civ. A. No. 92–1132.**

United States District Court, E.D. Pennsylvania.

Dec. 29, 1992.

---

Richard A. Sprague, Christine M. Gallagher, H. Coleman Switkay, Sprague & Sprague, Philadelphia, PA, for plaintiff.

William H. Oldach, Lynne Delanty Spencer, Pepper, Hamilton & Scheetz, Lloyd R. Ziff, Melinda P. Rudolph, John G. Harkins, Jr., Harkins Cunningham, Philadelphia, PA, for Wistar Institute of Anatomy and Biology.

Lynne Delanty Spencer, Pepper, Hamilton & Scheetz, Lloyd R. Ziff, Melinda P. Rudolph, John G. Harkins, Jr., Harkins Cunningham, Philadelphia, PA, for Robert Fox and Giovanni Rovera.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before the court are defendants' Motion for Summary Judgment on Counts I, III, and IV of plaintiff's Complaint and plaintiff's Motion to Compel Discovery. For reasons that follow, I shall grant defendants' motion in part and deny it in part and I shall grant plaintiff's motion.

### I. *Factual Background:*

Defendant Wistar Institute of Anatomy and Biology ("Wistar" or "the Institute") is a nonprofit corporation engaged in biomedical research. Defendant Robert A. Fox is the President of the Board of Managers of Wistar. Defendant Giovanni Rovera, M.D. is the current Director of Wistar. Dr. Koprowski, the plaintiff, continues his employment at Wistar as an Institute Professor and Director Emeritus.

On January 24, 1957, the Board of Managers of Wistar appointed Dr. Koprowski to be Director of the Institute. On the same day the President of the Board of Managers sent a letter to Dr. Koprowski announcing his appointment and outlining his duties, responsibilities, salary, and tenure rights as well as other conditions of his employment. Dr. Koprowski served as Director from 1957 until his removal in 1991.

In 1986, the Board of Managers adopted a resolution setting forth a retirement policy covering all of its employees. The resolution stated that:

[E]ach employee of the Institute shall continue to be reviewed in accordance with the Institute's employee performance evaluation procedures until the date of the employee's retirement, and any termination of employment will be on the basis of the provisions of such procedures and not on the basis of the employee's age.

Dr. Koprowski asserts that beginning in November, 1990, Robert A. Fox began a campaign to remove Dr. Koprowski as Director of the Institute in violation of The Age Discrimination in Employment Act ("ADEA"), the Institute's written policy against termination on the basis of age, and his rights to tenure.

On March 22, 1991, 16 members of the Board of Managers voted to remove Dr. Koprowski as Director of the Institute. The Board of Managers met again on April 5, 1992 to "ratify and confirm" the previous meeting's resolution to remove Dr. Koprowski. Fourteen members of the Board were present in person at the April 5th meeting. Seven members allegedly attended by telephone conference. Dr. Koprowski contends that the April Meeting was necessary because the March vote was improper as there was an insufficient number of members present to pass a resolution to remove him as Director. Dr. Koprowski further argues that the April 5, 1992 vote was also improper in that there was not a majority of the whole present for the vote as required by the Institute's Second Deed of Trust. Although defendants contend that seven members attended by telephone conference, Dr. Koprowski contends that there were not seven members who attended by phone and that those who did attend by phone were not on the phone during the requisite time frame or were not able to hear "each other" as required under Pennsylvania's Nonprofit Corporation Law, 15 Pa.Cons.Stat.Ann. § 5708.

Defendants seek summary judgment on Count I of plaintiff's Complaint, which asserts a violation of the ADEA, on the grounds that Dr. Koprowski's position as director exempts him from the protections that the ADEA offers. Defendants seek summary judgement on Count III of plaintiff's Complaint, which asserts a cause of action for improper removal from office, on the grounds that the Board of Managers' vote removing plaintiff was in compliance with the requirements of the Second Deed of Trust. Finally, defendants seek summary judgment on Count IV of plaintiff's Complaint, which asserts a claim for breach of contract, on the grounds that Dr. Koprowski has received the same tenure rights due full professors at the University of Pennsylvania to which he has argued he is entitled.

## II. Summary Judgment Standard:

A reviewing court may award summary judgment where there are no genuine issues as to any material fact, and one party is entitled to judgment as a matter of law. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 450 (3d Cir.1981); *Cousins v. Yeager*, 394 F.Supp. 595, 598 (E.D.Pa.1975). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the moving party has established that the complaint presents no material issue of fact, the burden is then on the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

## III. Discussion:

### A. Count I—The ADEA claim:

Count I of plaintiff's Complaint asserts a claim against defendant for age discrimina-

tion in violation of the ADEA. The ADEA provides:

> It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . . .

29 U.S.C. § 623.

Defendants, however, note that an exception to this general rule is provided in the Act as follows:

> (1) Nothing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age and who, for the 2–year period immediately before retirement, is employed in a bona fide executive or high policymaking position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing, savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equal, in the aggregate, at least $44,000.

29 U.S.C. § 631(c)(1). Both parties agree that Dr. Koprowski is a high policy maker or bona fide executive as defined in § 631(c)(1). Plaintiff contends, however, that the plain language of § 631(c)(1) requires a compulsory retirement program be in place for *all* bona fide executives or high policy making employees before an employer can invoke the exception.

Absent such an across the board policy or plan requirement, plaintiff contends the Act would allow for arbitrary action by employers against bona fide executives and high policy makers. The parties and the court have been able to find only a small number of cases dealing directly with § 631(c)(1). None of these cases, however, deal directly with whether an employer must have a mandatory retirement program for all relevant employees to invoke the bona fide executive exception. As such this issue is one of first impression.

Because the majority of cases involving § 631(c)(1) have been brought by plaintiffs who have been retired pursuant a mandatory retirement plan, plaintiff argues that those cases support his contention that a mandatory plan is required. *See, e.g., Passer v. American Chemical Society,* 935 F.2d 322 (D.C.Cir.1991) (plaintiff's employer had pre-existing policy that required plaintiff to retire no later than his 70th birthday); *Priester v. Amoco Corp.,* No. 89 C 6466, 1990 WL 77626 (N.D.Ill. May 21, 1990) (employer had policy requiring mandatory retirement at age 65); *Colby v. Graniteville Co.,* 635 F.Supp. 381 (S.D.N.Y.1986) (company had mandatory retirement policy that required executives to retire at the end of year in which they reached age 65); *Whittlesey v. Union Carbide Corp.,* 567 F.Supp. 1320 (S.D.N.Y.1983), *aff'd,* 742 F.2d 724 (2d Cir.1984) (employer had mandatory retirement policy).[1] In all of these cases the employer not only had a mandatory retirement policy in place, but the employee was retired pursuant to that policy. Plaintiff's argument, however, is without merit.

The mere fact that these cases happen to involve plaintiffs retired pursuant to a retirement policy or plan does not by itself mean that the statute requires such a plan. Without further indication that Congress intended that such mandatory plans be in place, a court should not read such a requirement into the statute. Moreover, none of these courts made reference to the presence of a plan in reaching its decision. Nor did any court actually address the issue before me.

There is at least one case, however, that supports the argument that a mandatory across the board plan is not required. In *Hysell v. Mercantile Stores Co.,* 49 Fair Empl.Prac.Cas. (BNA) 770, 1989 WL 6635 (S.D.N.Y.1989), the court denied defendant's request for summary judgment because it could not determine, based on the facts presented, whether the plaintiff was a bona fide

---

1. Although plaintiff contends that *Breckenridge v. Bristol–Meyers Co.,* 43 Fair Empl.Prac.Cas. (BNA) 1011, 1987 WL 15468 (S.D.Ind.1987) involved a compulsory retirement program, no such program is mentioned in the opinion. The opinion merely states that the plaintiff was compelled to retire because of his age.

executive as defined in the Act. The factual background of the case, however, indicates that the defendant did not retire plaintiff pursuant to any mandatory plan. Instead, the company sought advice from their counsel on whether plaintiff could be retired pursuant to the bona fide executive exception. Counsel informed defendants that plaintiff qualified as a bona fide executive under the Act and the plaintiff was retired pursuant to counsel's advice. Despite the lack of a mandatory retirement program for all bona fide executives, the court addressed the merits of the case and based its decision upon whether plaintiff was in fact a bona fide executive as defendants and their counsel contended. The lack of a mandatory retirement plan did not prevent the court from addressing the issue with which it was faced. Further, the use of the word "any" as opposed to "all" in § 631(c)(1) indicates that a mandatory policy applicable to *all* bona fide executives is not required. Instead, the statute should be interpreted to allow individual evaluation of an employee's ability.

■ Dr. Koprowski also contends that he was not "retired" under the Act because he maintains his staff position. Wistar acknowledges that Dr. Koprowski was not fully retired under the Act, but contends that § 631(c)(1) does not compel complete retirement. In determining whether Congress intended that the Act force employers to completely retire bona fide executives or allow employers to take a less adverse action, I am aided by the Act's stated purpose, its legislative history, and the Code of Federal Regulations enacted pursuant to the Act.

The purpose of the ADEA is to promote the "employment of older persons based on their ability rather than age; . . . ." 29 U.S.C. § 621(b). Such purpose indicates Congressional intent to have employees treated on an individual basis rather than as a group defined by age (or race, religion or sex as is true under Title Seven.). The fact that Congress has carved out a narrow exception for bona fide executives should not alter the overall intent of Congress to effectuate a system by which employees are treated based on ability rather than age. To allow employers to "demote" or transfer bona fide

executives from positions of high policy making to position with less responsibility is certainly more consistent with promoting the continued employment of "older person" than is requiring that employers completely retire such individuals. Under that scenario the employee loses out, if he is not ready to retire, as does the employer, who loses a resource that may no longer be equipped for some tasks but can certainly perform a host of others.

Further, the Act's legislative history indicates that the bona fide executive exemption was passed to "permit employers to *replace* certain key employees." S.Rep. No. 493, 95th Cong., 2nd Sess. 3 (1978), Reprinted in the U.S.Code Cong. & Admin.News 504, 510. (emphasis added). The use of the word "replace" rather than "retire" indicates Congress's intent to allow an employer to remove an employee without actually retiring him.

Finally, and perhaps most persuasive is the EEOC's own interpretation of § 631(c)(1), which provides:

> An employee within the exemption can lawfully be forced to retire on account of age at age 65 or above. *In addition, the employer is free to retain such employees, either in the same position or status or in a different position or status. For example, an employer who falls within the exception may be offered a position of lesser status or a part-time position.* An employee who accepts such a new status or position, however, may not be treated any less favorably, on account of age, than any similarly situated younger person.

29 C.F.R. § 1625.12(c). This section clearly indicates that an employer may retire, retain, or transfer an employee who meets the requirements of § 631(c)(1). This interpretation of 631(c)(1) is also consistent with the ADEA's stated purpose because it allows for an employer to make an evaluation based on an employee's ability and not his age. A compulsory retirement plan, on the other hand, would prevent such individual assessment and would require that the employers decision be based on age.

Dr. Koprowski, however, contends, that § 1625.12(c) allows for an adverse action, such as a change in status, only upon the

employee's consent. Dr. Koprowski alleges support for his argument by comparing § 1625.12(c) with § 1625.11(g) which states that *tenured* faculty can be retired at 70 as well as

> retained in the same position or status or in a different position or status: *"provided, that the employee voluntarily accepts this new position or status."*

Dr. Koprowski's argument is without merit. In fact, 1625.11(g) actually refutes plaintiff's interpretation of 1625.12(c). If Congress had intended to require a bona fide executive to "accept" his new status, § 1625.-11(g) clearly indicates that Congress knew how to do so. These two sections, which appear on adjoining pages in the Code of Federal Regulations, are clearly intended to assert different requirements for demoting or removing different type of employees.

Having reviewed the case law, the statutory language, and the Act's legislative history, I conclude that Congress did not intend that employers have an across the board mandatory retirement plan in place in order to retire or demote a bona fide executive. Section 631(c)(1) does not expressly require an across the board policy and I shall not read such a requirement into the Act. As such, I shall grant defendants' Motion for Summary Judgment on Count I of plaintiff's Complaint.

**B.** *Count III—Improper Removal:*

■ In Count III of his Complaint, Dr. Koprowski asserts that the Board of Managers violated Wistar's Second Deed of Trust by removing him as Director upon a vote of less than a majority of the whole number of managers at the March 22, 1991 Board Meeting and the April 5, 1991, Board Meeting. Wistar contends that even if the March vote was less than a majority, the April vote was a majority and therefore a proper removal.

At the time of the April meeting the Board of Managers consisted of 36 members. Fourteen Board members were present at the meeting and seven members were allegedly present by telephone conference. Wistar, therefore, argues that there was a majority of members present as Pennsylvania's Nonprofit Corporation Law allows for members to attend by phone conference:

> Except as otherwise provided in the by-laws, one or more persons may participate in a meeting of ... the board of directors or an other [sic] body ... by means of conference telephone or similar communications equipment by means of which all persons participating can hear each other. Participation in the meeting · pursuant to this section shall constitute presence in person at the meeting.

15 Pa.Cons.Stat.Ann. § 5708.

Dr. Koprowski, however, contends that those members who Wistar contends attended by phone, did not actually do so or if they did attend by phone were not on the line during the required amount of time. While plaintiff has produced no authority to support his contention that members present by phone conference be present for a particular time period, he has raised a genuine issue of material fact as to whether those members who contend they were on the phone actually were on the phone. In a separate motion, Dr. Koprowski has moved to compel the depositions of seven individuals who are alleged to have participated in the meeting by phone. The purpose of these depositions is to determine whether there were any irregularities in the conference call and whether those participating could hear everyone as required under § 5708. It is clear that the plaintiff must be afforded an opportunity to depose these witnesses. It is equally clear, however, that the information sought is extremely limited in nature. I will therefore grant plaintiff's motion to depose the individuals named, with restriction. Plaintiff shall be permitted to depose each individual for no longer than one hour. Wistar shall make every effort possible to produce these individuals in the time frame allotted in the accompanying Order.

It is clear that there exists a genuine issue of material fact as to whether the April vote was by a majority of the Board. As such, I will deny defendants' motion for summary judgment as to Count III.

**C.** *Count IV—Breach of Contract:*

· [4] In Count IV of his Complaint, Dr. Koprowski asserts that defendants breached

his contract when they removed him from office. Dr. Koprowski asserts that the terms of his employment are set forth in a letter he received, dated January 24, 1957. The letter outlined his duties and responsibilities and also set forth his rights as Director. The letter stated that Dr. Koprowski would have "the same rights and privileges as to tenure as does a full professor at the University of Pennsylvania."

Wistar originally contended that the tenure policy in place in 1957 applied only to a professor's status as professor and not to any administrative position. Defendants have recently acknowledged, however, that the policy under which they originally believed plaintiff was bound was not put into place until 1959. Instead, plaintiff is bound by a policy put into place in 1929. Unfortunately, no one has a copy of that policy.

Whether the tenure policy applies only to faculty position, is of little consequence. The 1957 letter clearly gives Dr. Koprowski the same right to tenure *in his position as director* as full time faculty members received. The letter addresses only Dr. Koprowski's role as Director. It makes no mention of his duties or rights as a professor. It clearly states that as director his salary would be commensurate with the highest paid professor at the University. The unambiguous language of the letter indicates that the duties and responsibilities as well as the rights are appurtenant to the position of Director. Defendants' argument that Professors had tenure only in faculty positions and not administrative positions is without merit because the letter by its very language extends the tenure policy to Dr. Koprowski's position *as Director.*

█ This conclusion, however, does not end the analysis. There still remains the issue of what the tenure policy was when Dr. Koprowski first became employed. No one is able to produce a copy of the relevant policy. No one knows what age faculty could be retired, if at all. Dr. Koprowski bears the difficult if not impossible burden of demonstrating to the jury what the tenure policy was in 1957 and that defendants have breached that policy. Dr. Koprowski has filed an affidavit in which he contends that in 1957,

the then President of the Institute assured him that Professors at the University were entitled to lifetime tenure. There exists a genuine issue of material fact in dispute as to exactly what the tenure policy was when Dr. Koprowski was granted equal rights under the 1957 letter. As such, I will deny defendants motion for summary judgment on Count IV. The issue to be resolved by the jury is whether tenure was for life or was it for a shorter period of time, and if it was for a shorter period of time what that time was. Whether the policy applied to administrative positions is immaterial as I have concluded that the policy, whatever it was, as a matter of law, applies to Dr. Koprowski's position as Director.

## IV. *Conclusion:*

I will grant defendants' motion for summary judgement on Count I. I will deny the motion as to Counts II and III as there are genuine issues of material fact in dispute. I will also grant plaintiff's motion to compel the deposition of those individuals requested in his motion.

An appropriate order follows.

## ORDER

AND NOW, this 29th day of December, 1992, upon consideration of defendants' Motion for Summary Judgment on Count I, III, and IV and plaintiff's response thereto and in consideration of plaintiff's Motion to Compel Discovery and defendants' response thereto, and consistent with the foregoing Memorandum, it is hereby ORDERED that defendants' motion is GRANTED as to Count I and JUDGMENT is ENTERED on Count I in favor of defendants and against the plaintiff. Defendants motion is DENIED in all other respects.

It is FURTHER ORDERED that plaintiffs Motion to Compel Discovery is GRANTED. Plaintiff shall have 10 days from entry of this Order with the Clerk of Courts to depose the individuals named in the motion. Plaintiff may depose each individual for no longer than an hour and the scope of the

questioning shall be limited to the telephone conference of April 5, 1991.

AND IT IS SO ORDERED.