Elsie BRUNNER, Paul Warnke, Lucille Warnke, Arthur Eugene Warnke and Ellen L. Kirkestue, Appellants,

v.

James BROWN and Orville Kapka, Appellees.

No. 91–15.

Supreme Court of Iowa.

Jan. 22, 1992.

James F. Smith of Noah & Smith, Charles City, and C.J. Anderson of Anderson, Story & Schoeberl, Cresco, for appellants.

Richard D. Stochl and Christopher F. O'Donohoe of O'Donohoe, O'Connor, O'Do-

**34**

nohoe & Stochl, New Hampton, for appellees.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

John Wermuth's will was challenged by family members on the ground that Wermuth lacked sufficient testamentary capacity. The trial court rejected these arguments, and the contestants appealed. Their sole complaint on appeal is that the court erred in refusing to allow their expert witness, during direct examination, to relate hearsay evidence that he had considered in forming his opinion on the decedent's mental state. We conclude that, while such evidence is admissible under Iowa Rules of Evidence 703 and 705, the district court did not abuse its discretion in rejecting it under the facts of this case.

The contestants' psychiatrist, Dr. Vernon P. Varner, was retained to investigate Wermuth's testamentary capacity. Because Wermuth was deceased, it was necessary for Dr. Varner to base his opinion on interviews he had with Wermuth's social acquaintances and his treating doctor. Dr. Varner testified that this evidence was the kind that psychiatrists regularly rely on in reaching their conclusions.

Dr. Varner was allowed to state his opinions, which were based on these interviews, but he was not permitted to relate the statements themselves or to state the contents of the medical report prepared by Wermuth's treating doctor. The court ruled that they were inadmissible hearsay.

■ The initial issue is whether an expert witness may relate, in his direct testimony, hearsay evidence on which his opinion is based.

Iowa Rule of Evidence 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Iowa rule is identical to Federal Rule of Evidence 703, as to which the advisory committee's note states:

[T]he rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Fed.R.Evid. 703 advisory committee's note, citing Rheingold, *The Basis of Medical Testimony*, 15 Vand.L.Rev. 473, 531 (1962).

■ An expert may testify from three possible sources: (1) the firsthand observation by the witness; (2) from information obtained at trial through hypothetical questions or the testimony of other witnesses; and (3) the presentation of data to the expert outside of court and other than by his own perception. *Id.*

The third source, outside presentation of data to the expert, supplements the traditional sources of information and recognizes the practicalities involved. Experts who make their living from examining various authenticating sources, and on which they often make life-and-death decisions, may be reasonably relied on for judicial purposes. *Id.*

Iowa rule 703 must be applied in tandem with Iowa Rule of Evidence 705, which provides:

The expert may testify in terms of opinion or inference and give his reasons

therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Rule 705 eliminates the requirement of preliminary disclosures at the trial through other witnesses or by the use of hypothetical questions. The hypothetical question is complex and time-consuming, and it affords an opportunity to argue a case in the middle of the evidence. *See* Ladd, *Expert Testimony*, 5 Vand.L.Rev. 414, 426–27 (1952); Fed.R.Evid. 705 advisory committee's note.

Under rules 703 and 705, two safeguards in the use of inadmissible evidence in conjunction with an expert's testimony are provided: (1) the information relied on must be of a type reasonably relied on by other experts in the field, and (2) the expert's reliance may be amply tested on cross-examination. *United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir.1985).

 Whether the underlying evidence is reasonably relied on for purposes of rule 703 is an issue for the trial judge. The expert's own testimony regarding reasonable reliance is not conclusive, being only one factor in the consideration. D. Binder, *Hearsay Handbook* § 103, at 457 (1983); Supp. at 267. If the underlying evidence is furnished by a biased witness, it probably will be excluded. *See, e.g., Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 622–24 (8th Cir.1986) (reversible error to admit investigating police officer's opinion based on interview with driver of one of the vehicles involved).

While rules 703 and 705 provide a broadened factual basis for expert testimony, they are silent on the question of whether the underlying hearsay evidence itself is admissible. The proponents of the will in this case concede that rules 703 and 705 permit the opinion based on hearsay, but they argue that the details of the underlying information may not be related by the expert on direct examination.

 Our rules of evidence are patterned after the federal rules, and we give considerable weight to their rationale and the cases interpreting them. According to the federal advisory committee, it was the intent of federal rule 705 to permit the introduction of "underlying facts or data" necessary to the expert's opinion:

> While the rule [705] allows counsel to make disclosure of the underlying facts or data as a preliminary to the giving of an expert opinion, if he chooses, the instances in which he is required to do so are reduced. This is true whether the expert bases his opinion on data furnished him at second hand or observed by him at firsthand.

Fed.R.Evid. 705 advisory committee's note.

One authority characterizes the use of this underlying evidence as falling under an "indirect exception" to the hearsay rule. Binder, *Hearsay Handbook* § 1.02, at 452. This authority states that

> the hearsay itself is not admissible as substantive evidence. It is only admissible to explain the basis of the expert's opinion. In other words, the trier of fact is allowed to give credence to an expert's opinion that is based on the assumption that certain hearsay is true, but is not allowed to give credence to the hearsay itself.

*Id.* § 1.01, at 451.

In such case,

> [a]n expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion ... but not as general proof of the truth of the underlying matter....

*Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir.1983). *Accord People v. Anderson*, 113 Ill.2d 1, 10–13, 99 Ill.Dec. 104, 108–09, 495 N.E.2d 485, 489–90 (1986).

> [C]ourts and rule makers have yielded to the pressures of expediency so as to recognize a relaxation of the exclusion of otherwise inadmissible hearsay, to the extent that it may be considered as a part of the witness's legitimate cumulation of knowledge if the hearsay information is of that sort as is customarily relied upon by experts in the practice of their profession. The sanction of the

general experience and reliability of the expert to sort out the acceptable information upon which he relies, from the unacceptable, is considered an adequate safeguard.

2 *Jones on Evidence* § 14:21, at 642 (1972). The rationale for this rule is that

[i]f the facts or data of the hearsay type, relied upon by experts are nevertheless inadmissible because there is no recognized hearsay exception under which they could come in, the question naturally arises: how does one test the reliability of the data if it cannot be made available in court for use in cross-examination? Supposedly the answer lies in relaxation of the hearsay rule in such cases so as to make the hearsay data exceptionally admissible on the same principle as that which justifies the expert's use of it, *i.e.*, general acceptability.

*Id.* § 14:21, at 643–44.

In *Anderson*, 113 Ill.2d at 8–9, 99 Ill.Dec. at 107, 495 N.E.2d at 488, the Supreme Court of Illinois held it was error to deny the introduction of underlying hearsay evidence as a part of the expert's testimony. First, the court noted that neither federal rule 703 nor 705 answers the question of whether eliciting specific facts upon which the expert opinion is based is a matter of right. It noted, however, that

in our judgment the logic underlying Rule 703 ... compels the conclusion that an expert should be allowed to reveal the contents of materials upon which he reasonably relies in order to explain the basis of his opinion.

*Id.* at 9, 99 Ill.Dec. at 107, 495 N.E.2d at 488. The court noted that rule 703 "expands the range of information available, at least indirectly, to the trier of fact." And, "[i]nasmuch as the opinion based on these materials—which are deemed trustworthy by the profession—is allowed, it would be both illogical and anomalous to deprive the jury of the reasons supporting that opinion." *Id.* at 10, 99 Ill.Dec. at 107–08, 495 N.E.2d at 488–89. The court in *Anderson* stated that this conclusion "accords with the overwhelming weight of authority from other jurisdictions as well as a great deal of persuasive scholarly commentary" and sets forth a list of other jurisdictions, and commentators, which concur with that view. *Id.*

The court continued:

To prevent the expert from referring to the contents of materials upon which he relied in arriving at his conclusion "places an unreal stricture on him and compels him to be not only less than frank with the jury but also ... to appear to base his diagnosis upon reasons which are flimsy and inconclusive when in fact they may not be." Absent a full explanation of the expert's reasons, including underlying facts and opinions, the jury has no way of evaluating the expert testimony and is therefore faced with a "meaningless conclusion" by the witness.

*Id.* at 10–11, 99 Ill.Dec. at 108, 495 N.E.2d at 489 (citations omitted). We agree with this observation.

In *Affleck,* an income tax prosecution, the court allowed introduction of statements by the defendant's employees that had been reasonably relied upon by the government's expert. The court noted that such hearsay information must be used only as a basis for the expert's opinion and not for the truth of the matter asserted. 776 F.2d at 1458.

In *Lewis v. Rego Co.*, 757 F.2d 66 (3d Cir.1985), an expert metallurgist relied on another expert's opinion in his direct testimony. The court stated that

[a] lay witness' conversation with [the expert witness] would not have been admissible in evidence. However, since [the expert's] conversation with [the second expert] was the kind of material on which experts in the field base their opinions, inquiry concerning the conversation should have been permitted.... Although it is not required that the basis for experts' opinions be disclosed before an opinion is given, the bases of an opinion may be testified to on direct examination and, if inquired into on cross-examination, must be disclosed.

*Id.* at 74 (citation omitted).

In *Brown v. United States*, 375 F.2d 310 (D.C.Cir.1966), an expert testified regard-

ing the defendant's sanity and relied in part on statements made to him by nursing assistants. The court stated:

In forming an expert opinion it may be necessary to rely upon information—hearsay though it be—which in part is derived from persons charged with the supervision of the one whose conduct is involved. The information is winnowed through the mental processes of the expert, and is by him either accepted or rejected. If information such as is here challenged is accepted as usable by the doctor it is not so liable to be untrustworthy as to require the court to rule that his opinion is unworthy of consideration by the jury. *The witness having used the information it was not error to permit him to state what it was.*

*Id.* at 318 (emphasis added).

In *United States v. McCollum*, 732 F.2d 1419 (9th Cir.1984), an expert for the defendant stated that he relied on hearsay evidence in forming his opinion. The court stated that

an expert witness may be permitted to state an opinion based on otherwise inadmissible hearsay when the source of information is "of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject." Where the nature of the out-of-court statements made by the defendant form the basis for an expert's opinion concerning the defendant's mental state, the expert may be permitted to recite the out-of-court statements.

*Id.* at 1422–23 (citations omitted).

■ If the hearsay related by the expert is not limited in its scope, through a limiting instruction to the jury, the jury may consider the underlying evidence as substantive evidence. *Fox,* 694 F.2d at 1356; Binder, § 1.01, at 451. A limiting instruction, of course, should be requested. For the form of such an instruction, *see Affleck,* 776 F.2d at 1458.

In the present case, the trial court noted the broad reach of federal rules 703 and 705, but it expressed the view that Iowa cases have been more restrictive, citing *State v. Barrett,* 445 N.W.2d 749 (Iowa

1989). In *Barrett,* however, we did not restrict the scope of rules 703 or 705. We simply held that an expert witness's bare statement that other experts agreed with him did not establish that such opinions were reasonably relied on by experts in that field. They were therefore inadmissible as lacking in foundation. *Id.* at 751. There is nothing in *Barrett* that is inconsistent with our present view of rules 703 and 705 as expressed in this opinion.

■ The trial court has considerable discretion in the admission of expert testimony. *Sallis v. Lamansky,* 420 N.W.2d 795, 797 (Iowa 1988); *State v. Chancy,* 391 N.W.2d 231, 233 (Iowa 1986). To establish an abuse of that discretion, it must be shown that it was exercised on untenable grounds or was clearly erroneous. *Chancy,* 391 N.W.2d at 233.

■ While the underlying hearsay evidence was admissible under rules 703 and 705, we do not believe that the trial court abused its discretion in refusing to admit it. As the court noted, the doctor, whose hearsay report was attempted to be used by Dr. Varner, as well as the lay witness interviewed by Dr. Varner, were to be witnesses at the trial.

These will contestants have not shown that they were unable to obtain the evidence in question from examination of these witnesses, just as well as through the testimony of Dr. Varner. Moreover, having been denied the opportunity to introduce the hearsay evidence in Dr. Varner's direct testimony, the contestants could have recalled Dr. Varner after the lay witnesses and Wermuth's treating doctor had testified. He could then be asked to express his opinion based upon the testimony of those witnesses, or Dr. Varner could have been asked hypothetical questions using the facts to which those witnesses would testify.

We conclude that there was no abuse of discretion in the trial court's rulings, and we therefore affirm.

AFFIRMED.