Judy CORRIGAN

v.

**METHODIST HOSPITAL, Sanford
H. Davne, M.D. and Donald
Myers, M.D.**

Civ. A. No. 94–1478.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 1994.

Joseph L. Messa, Jr., Thomas W. Sheridan, Giuliana F. Robertson, Mark W. Tanner, Ominsky, Welsh and Steinberg, P.C., Philadelphia, PA, for plaintiff.

Nancy A. Nolan, Kimberly A. Cummings, Post & Schell, P.C., Philadelphia, PA, for defendant Methodist Hosp.

Kevin H. Wright, Amalia V. Romanowicz, Wright, Young & McGilvery, P.C., Plymouth Meeting, PA, for defendant Sanford H. Davne, M.D.

Daniel F. Ryan, III, Christine A. Egan, O'Brien & Ryan, Plymouth Meeting, PA, for defendant Donald Myers, M.D.

## MEMORANDUM

JOYNER, District Judge.

Before this Court today is Defendant Methodist Hospital's motion for summary judgment. It identifies six claims against it, each of which will be addressed in turn by this Memorandum.

### FACTUAL BACKGROUND

Corrigan's Complaint alleges that on July 9, 1991, she first sought medical treatment for back pain from the defendant doctors, Sanford H. Davne and Donald Myers. After several months of treatment for this condition, Davne and Myers purportedly represented to Corrigan that surgery was the only available option to improve her condition. On March 5, 1992, Corrigan was admitted to defendant Methodist and underwent a lumbar foramenotomy, L4–5 discectomy and posterior lateral lumbar fusion.

Following her discharge on March 14, 1992, Corrigan continued to be followed by Davne and Myers, who prescribed various narcotic medications to relieve the continued intractable pain in her back and legs, muscle spasms and cramping. These symptoms apparently failed to abate and, in fact, grew worse with time. As a result, in October, 1992, Corrigan consulted doctors Mark Kotopka, John Esterhai and M.D. Cheatal at the Hospital of the University of Pennsylvania. On November 11, 1992, after several clinical examinations and tests, including an MRI, she was diagnosed as suffering from a thoracic meningiomal tumor at the T6 level.

Corrigan filed this lawsuit on March 4, 1994 alleging that Methodist violated the doctrine of corporate negligence in that Methodist negligently permitted use of the Acromed VSP plate and pedicle screw system [1] and negligently extended staff privileges to Davne and Myers. In addition, the complaint alleges that the defendant doctors and Meth-

---

1. There is some confusion over what devices were actually used in the surgery. The complaint alleges that the VSP plate and pedicle screw system were used and Corrigan's experts state that VSP pedicle screws were implanted. However, the "implant log" states that VSP Bone Screws and Isola Rods were actually the devices used. It appears from the parties' arguments that there is a question of fact as to whether pedicle screws were Class III devices and bone screws only Class II devices. If there is a difference between the two, it will be, of course, a fact issue for the jury to decide which device was used in Corrigan's surgery and what its FDA status was. For the purposes of this Motion, we refer to the devices as VSP Screws.

odist Hospital failed to obtain her informed consent for the lumbar fusion surgery in that she was not advised that 1) they planned to use the VSP Screws in the surgery; 2) there was a risk of screw failure which could lead to an increase in pain, suffering and disability; 3) use of the VSP Screws in the spine was still considered investigational for use in lumbar fusion procedures; or 4) that Davne and Myers had a financial interest in Acromed by virtue of the fact that they held stock options and served as members of Acromed's Medical Advisory Board. The complaint further alleges that all defendants were negligent in failing to appropriately diagnose and treat Corrigan's meningiomal tumor with the result that she was forced to suffer unnecessary surgery and pain.[2]

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

## DISCUSSION

■ According to Methodist, its main legal argument is that Corrigan has not demonstrated that she has suffered any injury from the use of the VSP Screws. Because it is an argument that Methodist makes throughout its Briefs, we address it up front, and its resolution will apply throughout this Memorandum.

Methodist's argument is similar to one raised in Defendant Davne's Motion for Summary Judgment. We addressed this issue in our Order dated December 6, 1994. Davne argued that because the VSP Screws were properly positioned and had not broken or otherwise been damaged, that Corrigan had not suffered any recoverable injury. We rejected that argument on the ground that Corrigan's claim is that she suffered an injury in the decision to use the VSP Screws and undergo surgery at all. This finding is equally applicable to Methodist's arguments.

### 1. Corporate Negligence re: Medical Devices

■ Many of Corrigan's claims are based on the theory of corporate negligence established in *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991). There, the Supreme Court of Pennsylvania held that "[c]orporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *Id.* at 339, 591 A.2d at 707. The Supreme Court found four areas of duty owed by a hospital:

(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

(2) a duty to select and retain only competent physicians;

(3) a duty to oversee all persons who practice medicine within its walls as to patient care; and

(4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Id.* (citations omitted).

Here, Methodist argues that the VSP Screws have not caused Corrigan any harm,

2. Earlier, this Court dismissed a claim that defendants engaged in a civil conspiracy to circumvent FDA restrictions on the marketing, labeling and use of the Acromed VSP system.

therefore, she has no claim for negligence. In addition, it asserts that Corrigan "must establish through expert testimony the connection between the hospital's conduct and the resulting harm complained of in order to prove corporate negligence."

First, as we discussed above, we have concluded that Corrigan has shown a cognizable injury. *See Pratt v. Stein,* 298 Pa.Super. 92, 444 A.2d 674 (1982) (negligent to use particular product in treatment); *Hawkins v. Greenberg,* 159 Ga.App. 302, 283 S.E.2d 301 (1981) (doctor negligent when injected drug patient was allergic to, even though injection done properly).

Second, Corrigan's experts, including Dr. Alexander and Dr. Kaufman, have opined that Methodist's inadequate policies and practices made it possible for Davne and Myers to use the VSP Screws on her spine, and therefore, suffer the alleged injuries. This is sufficient to show causation.

We find a genuine issue of material fact as to whether Methodist's alleged negligence was causally connected to the alleged injuries, and accordingly, deny summary judgment on this claim.

### 2. Corporate Negligence re: Staff Privileges

■ Methodist asserts that there is no evidence to support Corrigan's negligent credentialing claim. It bases this argument on the theory that Corrigan's expert on this issue, Dr. Kaufman, improperly relied on privileged peer review material to form his opinion. Methodist informs this Court that it will be filing a motion to strike Dr. Kaufman's expert opinion, but has not done so to date. Beyond the peer review argument, Methodist presents no legal argument to support its motion for summary judgment. Nor does it point to, or do we find, any evidence that Davne and Myers were properly credentialed.

In contrast, Corrigan's expert, Dr. Kaufman, opines that Methodist Hospital failed in its duty to Corrigan by granting privileges to Davne and Myers. He apparently bases this opinion on both the allegedly privileged Quarterly Staff Meeting Minutes of September 19, 1991 and the fact that Davne had

previous medical malpractice suits brought against him.

Without a Motion before us, we will not rule on whether or not Dr. Kaufman can rely on the Quarterly Minutes for his opinion. However, for the purposes of this Summary Judgment Motion, we draw inferences in favor of the non-moving party, Corrigan. Drawing inferences, we find that credentialing doctors with knowledge of, or failure to learn of, their malpractice history could be negligent. This is sufficient to raise a genuine issue of material fact as to whether Methodist negligently credentialed Davne and Myers. Because of this finding, we need not rely on other, possibly improper, aspects of Dr. Kaufman's report. Accordingly, summary judgment on this claim is denied.

### 3. Corporate Negligence re: FDA Violations

■ Methodist asserts that Corrigan's complaint raises a claim under the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. §§ 301–392 (1972 & Supp.1994) (FDCA) that must fail because there is no private right of action under the FDCA. *Gile v. Optical Radiation Corp.,* 22 F.3d 540, 544 (3rd Cir. 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Brinkman v. Shiley, Inc.,* 732 F.Supp. 33, 35 (E.D.Pa.), *aff'd,* 902 F.2d 1558 (3d Cir.1989).

Insofar as Corrigan is asserting a claim under the FDCA, Methodist is correct that that claim must fail. However, we do not read Corrigan's complaint or her many briefs in this litigation to support such a claim. Rather, Corrigan argues that Methodist, and the other defendants were negligent, in part because they improperly used devices that had been specifically regulated by the FDA. There is clearly an issue of fact as to whether the VSP Screws were regulated as Corrigan alleges. This issue is subsumed in Corrigan's other claims, however. Accordingly, because we do not find that Corrigan raises a claim under the FDCA, we cannot grant or deny summary judgment on it.

### 4. Informed Consent

■ In our November 1, 1994 Memorandum and Order, we held that Corrigan had adequately pleaded an informed consent

claim against Methodist on two grounds.[3] The tort of failure of informed consent sounds in battery, not negligence. *Moure v. Raeuchle,* 529 Pa. 394, 405, 604 A.2d 1003, 1008 (1992); *Gouse v. Cassel,* 532 Pa. 197, 203, 615 A.2d 331, 334 (1992); *Foflygen v. Zemel,* 420 Pa.Super. 18, 33, 615 A.2d 1345, 1353 (1992) (citing cases), *app. denied,* 535 Pa. 619, 629 A.2d 1380 (1993). Because the tort is based on battery, an intentional tort, "the law imposes no duty on a hospital to obtain consent from a patient prior to an operation." *Hurley v. Won,* 9 Pa.D. & C.3d 796, 798 (C.P.1979); *McKnight v. American Red Cross,* No. 92–4038, 1994 Westlaw 323861 at \*3 (E.D.Pa. July 6, 1994); *Foflygen,* 420 Pa.Super. at 33, 615 A.2d at 1353 ("Under normal circumstances, only the physician who performs the operation on the patient has the duty of obtaining the patient's informed consent").

There are exceptions to this general rule, two of which we found were pleaded in this litigation.

The first exception arises from *Friter v. Iolab Corp.,* 414 Pa.Super. 622, 607 A.2d 1111 (1992). *Friter* held that a "hospital, as a participant in a clinical investigation for the FDA, [could] specifically assume[ ] a duty to ensure that an informed consent was obtained by any patient participating in the study." *Id.* We found that Corrigan had pleaded facts that, if proven, brought Methodist within FDA regulations.

The second exception that we found is based not on battery but on negligence. We held that under the corporate negligence theory established in *Thompson,* a hospital can be sued for negligently failing to oversee its doctors and failing to "formulate, adopt and enforce adequate rules and policies," which may include policies governing obtaining informed consent. *Thompson,* 527 Pa. at 339, 591 A.2d at 707. We found that Corrigan had pleaded facts to show that Methodist had

a duty to establish policies overseeing informed consent issues.

■ Accordingly, our inquiry today is whether Corrigan has established genuine issues of material fact to support her claim of failure of informed consent under the *Friter* or *Thompson* theories.

First, a simple reading of the parties' briefs indicates that there is significant dispute as to whether Methodist was subject to FDA regulations. Corrigan argues that Methodist was regulated because it purchased the VSP Screws for its doctors' use. Corrigan has provided this Court with an opinion of the former Director of the Division of Surgical and Rehabilitation Devices at the FDA, Carl Larson, who was apparently involved in regulating the VSP Screws. He opines that Acromed was informed that when the VSP Screws were approved for long-bone use, that the letter stated "WARNING— THIS DEVICE HAS NOT BEEN APPROVED FOR PEDICULAR APPLICATION. Any pedicular fixation of this device is considered investigational and may only be investigated as a significant risk device in accordance with the investigational device exemption." This statement creates a material issue of fact as to whether FDA regulations applied to the VSP Screws, and therefore, whether Methodist was bound to receive Corrigan's informed consent to use the VSP Screws.

Second, Corrigan's experts have shown facts to indicate an independent duty on Methodist's part to establish policies governing informed consent. For example, Dr. Larson opined that the FDA required a hospital to form an Investigational Review Board with the duty to assure "appropriate patient informed consent." Dr. Kaufman opined that Methodist had inadequate policies and procedures to protect its patients' safety. Corrigan also points to Methodist's

**3.** This Court has already found, in our Memorandum and Order denying Defendant Davne's summary judgment motion, that Corrigan has demonstrated a genuine issue of material fact as to the basic elements of an informed consent cause of action. Namely, we found that Corrigan's experts established a surgical risk in that the alleged Class III FDA status of the VSP Bone

Screws meant that they had not been proven to be safe and effective. Accordingly, it is a question for the jury to determine whether that risk was material. Similarly, we held that Corrigan's experts had shown an issue of fact as to causation such that summary judgment was inappropriate.

Rule 30(b)(6) corporate designees' testimony. Drs. Mokyrinski and Hannifan testified that they were not aware that any rules or policies existed to ensure informed consent of Methodist's patients. Because we find that Corrigan has established genuine issues of material fact as to whether Methodist was subject to FDA regulations and as to whether it had an independent duty to assure the informed consent of its patients, we cannot grant summary judgment on this claim.

### 5. Civil Conspiracy

This claim was dismissed against Methodist in this Court's November 1, 1994 Memorandum and Order. Accordingly, a discussion whether summary judgment is appropriate is irrelevant.

### 6. Ostensible Agency

■ In Pennsylvania, a hospital may be held liable for the acts of an independent contractor, usually a doctor, if the plaintiff can show that the contractor was the ostensible agent of the hospital. *Capan v. Divine Providence Hosp.,* 287 Pa.Super. 364, 430 A.2d 647 (1980). The test is (1) whether the patient looks to the hospital, not to the contractor for care, and (2) whether the hospital "holds out" the contractor as its agent. *Id.* at 368–69, 430 A.2d at 649. The classic example of ostensible agency is where a patient enters a hospital emergency room and accepts care from whichever doctor is assigned by the hospital. In that situation, the patient does not look to the doctor but to the hospital for her care, and the hospital can be seen to have held the doctor out as its agent.

■ Methodist argues, and supports factually, that there is no evidence in the record to support a finding of ostensible agency. It points to Corrigan's deposition, where she testified that she received care from Davne and Myers months before she entered the hospital and that she requested her surgery to be performed at a different hospital. It observes that apart from her complaint, Corrigan has not averred that Methodist held the doctors out as its agent.

Corrigan disputes this, but does not point to any specific evidence in the record to support it. Moreover, we do not see in her deposition,[4] or in her expert opinions that she looked to the hospital, and not Davne and Myers, for her care, or that Methodist held Davne and Myers out as its agents.

To survive a motion for summary judgment, a plaintiff must show facts to establish each element of her case. *J.F. Feeser,* 909 F.2d at 1531; *Koprowski v. Wistar Institute,* 819 F.Supp. 410, 412 (E.D.Pa.1992); Fed. R.Civ.P. 56(e) ("adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). Corrigan has presented this Court with no evidence to support her claim of ostensible agency. Accordingly, we grant summary judgment on this claim.

### 7. Punitive Damages

■ Methodist argues that Corrigan has not supported her claim for punitive damages because she has not shown outrageous conduct or conscious disregard of the risks on its part. Corrigan alleges that Defendants "acted willfully, wantonly, and with reckless disregard for the consequences of their conduct, acts and omissions as described more fully at length herein." Complaint ¶ 95. In 1992, our Court held that identical language stated a claim for punitive damages. *Fields v. Graff,* 784 F.Supp. 224, 226 (E.D.Pa.1992); *See also McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 622–23, 533 A.2d 436, 447 (1987), *app. denied,* 520 Pa. 589, 551 A.2d 215 (1988).

Corrigan alleges that all defendants knowingly performed experimental surgery on her, without her consent, and with disastrous results. Corrigan's experts, including Carl A. Larson, Ph.D, P.E., Director, Division of Surgical and Rehabilitation Devices at the FDA during the time Acromed sought approval for use of the VSP Screws, have opined that the VSP Screws were an experimental device. Corrigan alleges that Meth-

---

4. Corrigan's brief in opposition to this motion does not attach any pages from her deposition.

Accordingly, we can only rely on the pages that Methodist has provided.

odist knowingly permitted Davne to knowingly use the VSP Screws in her surgery. A jury may well find that this is outrageous. Accordingly, because Corrigan has raised facts to support a claim for punitive damages, summary judgment will not be granted.

An appropriate Order follows.

### ORDER

AND NOW, this 6th day of December, 1994, upon consideration of Defendant Methodist Hospital's Motion for Summary Judgment and responses thereto, the Motion is hereby GRANTED in part and DENIED in part. The Motion is GRANTED as to the claim of ostensible agency against Methodist. In all other respects, the Motion is DENIED.