C.S.I. CHEMICAL SALES, INC., Plaintiff–Appellee,

v.

MAPCO GAS PRODUCTS, INC., d/b/a Thermogas Company of Prairie City, Defendant–Appellant.

No. 95–741.

Court of Appeals of Iowa.

Oct. 25, 1996.

·Robert Kohorst and William T. Early of the Kohorst Law Firm, Harlan, and Mark M. McCormick of Belin Harris Lamson and McCormick, A.P.C., Des Moines, for defendant-appellant.

John R. Hearn and Patrick M. Carpenter, Des Moines, for plaintiff-appellee.

Considered by HABHAB, P.J., and CADY, and VOGEL, JJ.

CADY, Judge.

This case presents the principal issue whether an expert witness may present testimony about facts and opinions of non-testifying experts to support his opinion. On our review, we affirm.

C.S.I. Chemical Sales, Inc. is a business engaged in the manufacture and sale of liquid fertilizer. The president of the corporation is Lyle Carpenter.

On March 2, 1993, a fire completely destroyed the C.S.I. fertilizer plant in Bondurant, Iowa. C.S.I. claimed the fire occurred due to the negligent inspection and repair of

a furnace in the plant by Mapco Gas Products, Inc. C.S.I. brought a lawsuit which proceeded to trial.

Carpenter provided the core testimony at trial to support the claim for damages. He began work in the fertilizer business in 1953. Since that time, Carpenter has been involved in the design and construction of many fertilizer plants around Iowa. He has also consulted with other fertilizer plant owners over the years, and has actively participated in organizations relating to the fertilizer business. He is a high school graduate with no special training in valuating property. He is familiar with the equipment that makes up a fertilizer plant.

The Bondurant plant was built in 1957. The building was forty by sixty feet, and consisted of a metal frame covered with thin steel metal panels. A wood-framed room inside the building housed a large stainless steel tank. C.S.I. used the tank to mix the chemicals to produce the liquid fertilizer. In 1977, C.S.I. renovated the plant. The renovation included new electrical wiring, pipes, stainless steel vessels, and control panels.

Carpenter testified the replacement cost of the plant and its contents was $524,932. He arrived at this figure using his experience in the industry and considering the construction and replacement bids he solicited from various contractors and suppliers. In particular, a building contractor gave Carpenter a bid of $20,000 to erect a new steel building. An electrical contractor gave Carpenter an estimate of $21,055 to rewire the new building. Another building contractor gave Carpenter an estimate of $28,964 to build a new interior office and mixing room. Additionally, an equipment distributor gave Carpenter an estimate of $435,000 to replace the internal operating mechanisms of the plant. Carpenter testified all the bids were fair and reasonable based on his experience in constructing and operating fertilizer plants.

Carpenter also testified the various components of a new plant would only replace those he had prior to the fire. He said he kept the plant in excellent condition, frequently replacing worn equipment, and deducted only

$10,000 for the total depreciation of existing plant components just prior to the fire. He concluded the value of the plant just prior to the fire was $514,932. There was testimony the plant was unique and had no recognized market value.

The trial court admitted Carpenter's testimony over repeated objections by Mapco that it constituted hearsay. The jury returned a verdict for C.S.I. in the amount of $250,056.

Mapco appealed. It raises four issues, all relating to the award of damages. First, it claims C.S.I. failed to present sufficient evidence to support damages. Second, it claims the trial court erred in instructing the jury on the measure of damages. Third, it argues the trial court erred by allowing C.S.I. to present evidence of the value of new replacement equipment. Finally, it asserts the trial court erred in allowing Carpenter to give hearsay evidence of the replacement costs.

■ We reject Mapco's claim there was insufficient evidence to enable the jury to determine the value of the plant just prior to the loss. We also reject its contentions the trial court erred by improperly instructing the jury on the measure of damages and by permitting testimony of the value of the replacement equipment. There was ample evidence the plant had no recognized market value. Thus, it was appropriate for the jury to determine damages by considering the cost of repair, not to exceed the value of the plant just prior to the fire. *See State v. Urbanek*, 177 N.W.2d 14, 16–17 (Iowa 1970). Many factors are considered in determining the pre-loss value of property. C.S.I. introduced substantial evidence on the pre-loss value of the property including testimony the cost of repairs would merely restore the property to its former condition.

We believe the fighting issue is whether Carpenter should have been permitted to testify about the replacement costs submitted by the various contractors and suppliers.

■ Iowa Rule of Evidence 703 allows experts [1] to give opinions based on facts and

---

1. Mapco did not lodge an objection at trial that Carpenter was not qualified to render an expert

data not admissible in evidence when such information is reasonably relied upon by experts in the particular field in forming opinions. *See Brunner v. Brown,* 480 N.W.2d 33, 35 (Iowa 1992). This permits an expert in one field to base an opinion in part on the information and opinions of other experts in other fields. *Concerned Area Residents v. Southview Farm,* 834 F.Supp. 1422, 1436 (W.D.N.Y.1993). Clearly, an expert cannot be an expert in all fields and it is reasonable to expect experts will rely on opinions and information from experts in other fields as background material for arriving at an opinion. *United States v. 1,014.16 Acres of Land,* 558 F.Supp. 1238, 1242 (W.D.Mo.1983), aff'd, 739 F.2d 1371 (8th Cir.1984).

 Rule 703, however, does not automatically permit hearsay evidence to be admitted at trial simply because an expert is testifying. *Blue Cross and Blue Shield v. W.R. Grace & Co.,* 781 F.Supp. 420, 427 (D.S.C.1991). The rule first requires the underlying hearsay be "fact or data" reasonably relied upon by experts in the field in reaching their conclusions. *Brunner,* 480 N.W.2d at 37. Once this foundational requirement is met, the evidence is only admitted to explain the basis for the expert opinion. *Brunner,* 480 N.W.2d at 37; *Kim v. Nazarian,* 216 Ill.App.3d 818, 827, 159 Ill.Dec. 758, 764, 576 N.E.2d 427, 433 (1991). It is not admitted for its truth. *Id.* Consequently, the rule does not empower an expert witness to testify other experts subscribe to or support his or her opinion. *State v. Barrett,* 445 N.W.2d 749, 751 (Iowa 1989). This type of testimony is not only insufficient to establish the prerequisite foundation, *Brunner,* 480 N.W.2d at 37, it relates to the truth of the matter by bolstering credibility and permits an expert to improperly serve as an conduit for the opinion of another witness. *Hutchinson v. Groskin,* 927 F.2d 722, 725 (2d Cir.1991).

 We observe an important distinction between the introduction of information or an opinion of a nontestifying expert as a basis for an opinion and the use of such informa-

tion to corroborate the opinion. *See Nazarian,* 216 Ill.App.3d at 827, 159 Ill.Dec. at 765, 576 N.E.2d at 434. Hearsay may be introduced under rule 703 only as a premise or basis for an opinion of an expert witness. Corroboration might reinforce an expert's confidence in an opinion, but does not serve as a basis for the opinion. *Id.*

 We acknowledge a general contractor would normally be permitted to rely on bids or estimates of subcontractors or suppliers in rendering an opinion on the cost of constructing a building. *See Barley v. Louisiana Through Louisiana Dep't. of Highways,* 463 So.2d 689, 693 (La.App.1985). These bids or estimates would typically be admissible to explain the basis for a contractor's opinion, once the foundation was satisfied. In this case, however, Carpenter testified he not only used the bids and estimates to formulate his opinion, he also believed they were fair and reasonable based on his experience. Moreover, Carpenter acknowledged he used the price quotes to confirm what he already knew. Thus, the underlying information was used both to explain and corroborate Carpenter's opinion.

We conclude the trial court did not abuse its discretion by permitting Carpenter to testify about the bids and estimates he used to formulate his opinion. *See Wadle v. Jones,* 312 N.W.2d 510, 515 (1981) (admission of expert testimony rests largely in sound discretion of the trial court, and a ruling will not be reversed absent an abuse of discretion to the prejudice of the complaining party). Mapco never lodged an objection that C.S.I. failed to establish the necessary foundation under rule 703, and most of the testimony indicated Carpenter used the bids as a basis for his opinion, not simply to corroborate his opinion.

We are also unable to find Mapco was prejudiced. The most critical component of the replacement cost of the building was the cost of the equipment. One of the suppliers testified at trial and was subject to cross-examination. Thus, Carpenter's testimony

opinion on the pre-loss value of the plant or the replacement cost of the plant. Moreover, there was no objection Carpenter did not have the knowledge, skill, experience or training to utilize

the depreciation component in rendering an opinion based on the cost of repair less depreciation.

was mainly cumulative. Furthermore, although the trial court did not give a limiting instruction concerning the bids, Mapco never requested such an instruction be given.

We have considered all the claims raised by Mapco and affirm the district court.

**AFFIRMED.**

SACKET, C.J., and STREIT, J., take no part.