# IN THE SUPREME COURT OF IOWA

No. 19–0767

Submitted February 16, 2021—Filed May 14, 2021

**ROXANNE RIEDER** and **TONY RIEDER,**

Appellants,

vs.

**DAVID SEGAL, THEODORE DONTA, EASTERN IOWA BRAIN & SPINE SURGERY, PLLC, RADIOLOGY CONSULTANTS OF IOWA, PLC** and **MERCY HOSPITAL, CEDAR RAPIDS, IOWA** d/b/a **MERCY MEDICAL CENTER, CEDAR RAPIDS, IOWA,**

Appellees.

_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

The defendants seek further review of a court of appeals decision reversing the district court's grant of summary judgment in a negligent credentialing case. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Bruce L. Braley (argued), Brian N. Aleinikoff, Benjamin I. Sachs, and Timothy J. Luetkemeyer of Leventhal Puga Braley P.C., Denver, CO, for appellants.

Christine L. Conover (argued), Carrie L. Thompson, and Dawn M. Gibson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellees.

**McDONALD, Justice.**

Plaintiffs Roxanne and Tony Rieder filed suit against Mercy Medical Center for the negligent credentialing of Dr. David Segal after Ms. Rieder suffered complications following surgical procedures performed by Dr. Segal. A majority of jurisdictions recognize the tort of negligent credentialing, but Iowa is not one of them. This court has addressed the tort in a prior decision, but the court did not adopt the tort at that time. *See Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012) ("We assume without deciding that the tort is actionable in this state. As we find no reversible error in any of the district court's rulings . . . we need not decide the question whether the tort is actionable."). In this case, the parties and the district court assumed the plaintiffs' negligent credentialing claim against Mercy was cognizable in Iowa. The district court granted Mercy's motion for summary judgment. The court of appeals reversed the judgment of the district court, and we granted Mercy's application for further review. For the reasons set forth below, we vacate the court of appeals decision, reverse the judgment of the district court, and remand this matter for further proceedings.

I.

We review the grant of summary judgment for correction of errors at law. *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 336 (Iowa 2020). The grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Iowa R. Civ. P. 1.981(3)). In reviewing the district court's decision, we look at the summary judgment record in the

"light most favorable to the nonmoving party." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019).

## II.

On May 8, 2015, Dr. Segal performed an anterior cervical discectomy with fusion and a microscopic lumbar laminectomy on Roxanne Rieder. In other words, Dr. Segal performed upper neck and lower back surgery. In the days immediately after the surgery, Rieder experienced severe pain originating in her lower back and down the back of her leg. She was unable to lift her left leg out of the hospital bed. She reported increasing pain, weakness, numbness, and tingling in her left leg. Dr. Segal decided he had to perform additional procedures to "fix" Rieder. Four days after he performed the original procedures, Dr. Segal performed a lumbar decompressive laminectomy and decompression of the nerve roots. More generally, Dr. Segal performed a surgical reexamination of Rieder's lower back to relieve pressure and alleviate pain. Three days after the second surgical procedure, Rieder was discharged from the hospital. After being discharged, Rieder continued to experience symptoms including neck pain, left arm pain and numbness, intermittent shooting right arm pain, left foot drop, and pain and paresthesia extending into the buttocks, thighs, and calves in both legs. She treated with other physicians to address these symptoms.

On the same day Rieder was discharged from the hospital, the Iowa Board of Medicine (IBM) filed a statement of charges against Dr. Segal related to medical care he provided to patients other than Rieder. The charges stated Dr. Segal "demonstrated professional incompetency . . . when he failed to provide appropriate neurosurgical care to numerous patients in Cedar Rapids, Iowa." IBM investigations are confidential. *See* Iowa Admin. Code r. 653—24.2(8) (2015). As a result,

the charges were not public until May 15, 2015 when the IBM issued their formal statement of charges. However, Dr. Segal admitted he informed Mercy of the IBM's pending investigation at some point prior to Rieder's surgery on May 8, 2015.

The IBM charges were resolved against Dr. Segal in December 2016. Dr. Segal agreed to cease practicing surgery in Iowa. In a press release issued in December 2016, the IBM stated, "Dr. Segal discontinued his surgical practice due to his health condition of Parkinsonism, which impacts the steadiness of his hands during surgery. . . . Dr. Segal agreed that he will not engage in the practice of surgery under his Iowa medical license."

The Rieders filed this suit a few days prior to the IBM announcing the resolution of the charges against Dr. Segal. In their suit, the Rieders asserted claims for medical negligence against Dr. Segal and another physician as well as claims for negligent credentialing against the clinics and hospitals that employed or credentialed the doctors. The Rieders settled and dismissed their claims against all defendants except Mercy. As to Mercy, the Rieders alleged: (1) Mercy "was negligent in credentialing Dr. Segal as a member of its staff in that it failed to exercise reasonable care in investigating and selecting medical staff to permit only competent and qualified physicians the privilege of using its facilities"; (2) Mercy "knew, or should have known, that Dr. Segal did not possess the proper professional competency to practice"; and (3) Mercy's negligent credentialing of Dr. Segal caused Ms. Rieder's injuries.

There are two summary judgment rulings at issue in this appeal. Mercy first moved for partial summary judgment on the ground "there is no duty for the hospital to take immediate action with regard to a doctor's privileges upon finding out there is an open investigation by the Board of

Medicine." The Rieders resisted the motion, relying on the opinion of their expert witness, Dr. Charles Pietrafesa. Dr. Pietrafesa opined,

> based on the Iowa Medical Board's allegations[ and] the testimony of Dr. Segal that he alerted Mercy about these [IBM] allegations, the standard of care required Mercy to take swift and immediate action to limit, restrict, or suspend Dr. Segal's privileges with respect to care of any patients at Mercy at that time, including but not limited to Ms. Rieder, even on a conditional or temporary basis.

The district court granted Mercy's motion for partial summary judgment, holding "[d]efendant Mercy Hospital did not owe a duty to suspend or revoke Dr. Segal's credentials or privileges at the hospital in any way *based solely* upon the knowledge that an investigation had been opened by the Iowa Board of Medicine." (Emphasis added.) The district court continued, "Mercy Hospital, without knowing the basis of the investigation, could not have had a duty to 'restrict or terminate Dr. David Segal's surgical privileges' as of May 8, [2015] because it could not have known nor should it have known that he posed a serious risk to his patients, as the formal charges had not been filed yet and no final decision had been made."

After the district court entered its order, the parties continued on with motion practice and further discovery. In his deposition and supplemental disclosure, Dr. Pietrafesa opined Mercy breached the standard of care because it did not conduct an investigation into Dr. Segal's competency when it should have done so and, had it conducted an investigation, Mercy more likely than not would have suspended Dr. Segal's privileges prior to Dr. Segal performing procedures on Rieder. Dr. Pietrafesa clarified his opinion was not based solely on the IBM's investigation announced in May 2015. Instead, his opinion was based on numerous facts that should have put Mercy on alert: Dr. Segal was sued

for medical malpractice on numerous occasions, including the years 2004, 2005, 2006, 2007, 2008, 2014, and 2015; due to concerns regarding his competency, Dr. Segal was sent to the Center for Personalized Education for Physicians (CPEP) in 2012; and the IBM issued subpoenas for records, credentialing information, and complication rates that should have alerted Mercy to a potential issue.

Mercy filed a motion to strike the supplemental opinion and a second motion for summary judgment. Mercy argued evidence of the prior malpractice suits was not admissible and could not be considered for the purposes of summary judgment. Without this evidence, Mercy argued, there was no evidence in support of the plaintiffs' negligent credentialing claim. The district court agreed with Mercy on both points. First, after performing a balancing test under Iowa Rule of Evidence 5.403, the district court concluded "the probative value of evidence that Dr. Segal had been sued in the past, without any evidence as to the nature or results of those lawsuits, is substantially outweighed by the danger of unfair prejudice to Mercy as well as the danger of misleading the jury." The district court held evidence of the prior lawsuits was inadmissible as was Dr. Pietrafesa's opinion testimony to the extent it relied on the prior lawsuits. In the absence of the opinion evidence, the district court concluded there was no evidence in support of the Rieders' claim and granted Mercy's motion for summary judgment.

The court of appeals reversed the judgment of the district court. The court of appeals concluded the district court's use of rule 5.403 to determine the admissibility of the evidence "amounted to an impermissible weighing of the evidence." Because weighing the evidence is for the fact finder, the court of appeals reasoned, the district court erred in granting summary judgment. We granted Mercy's application for further review.

### III.

Iowa's appellate courts have not resolved the question of whether the tort of negligent credentialing is cognizable in this state. In *Hall v. Jennie Edmundson Memorial Hospital*, we assumed without deciding the tort was cognizable. *See* 812 N.W.2d at 685. We declined to resolve the issue because "the defendants ha[d] not claimed the tort should not be recognized and we prefer[red] to confront and decide the issue in a case in which the matter [was] disputed and briefed by the parties." *Id.* at 685 n.4. In *Day v. Finley Hospital*, the court of appeals discussed the tort of negligent credentialing while acknowledging this state had not yet recognized such a claim. 769 N.W.2d 898, 901–02 (Iowa Ct. App. 2009). *Day* did not explicitly adopt the tort. *See id.*

While it might be more expeditious to resolve the issue in this case, we decline to do so. As in *Hall*, Mercy did not dispute the existence of the tort in the district court. Mercy assumed, without conceding, a negligent credentialing claim is viable. The question of whether a negligent credentialing tort is viable was never presented to or ruled on by the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (stating issues must be raised and decided in the district court). As in *Hall*, Mercy does not challenge the viability of the tort on appeal. To the contrary, Mercy is adamant that it does not seek a ruling on the viability of the tort. Instead, it assumes such a tort is viable and seeks affirmance of the district court's summary judgment ruling that there is no evidence to support a negligent credentialing claim.

Amici do request a ruling on the issue: the Iowa Hospital Association, the American Medical Association, and the Iowa Medical Society argue we should not recognize the tort while the Iowa Association for Justice argues we should recognize the tort. We decline amici's request

because reviewable issues must "be presented in the parties' briefs, not an amicus brief." *Martin v. Peoples Mut. Sav. & Loan Ass'n,* 319 N.W.2d 220, 230 (Iowa 1982) (en banc).

Accordingly, for the purpose of this appeal, we assume without deciding the tort of negligent credentialing is cognizable.

IV.

We must determine the contours of the tort to determine whether there is a genuine issue of material fact for the fact finder. In determining the contours of the tort, we take guidance from other states. Twenty-eight states recognize negligent credentialing as a cause of action. *See* Peter Schmit, *Cause of Action for Negligent Credentialing,* 18 Causes of Action (Second) § 10, at 338–43 (2002) (listing the states that recognize the tort of negligent credentialing); Sean Ryan, *Negligent Credentialing: A Cause of Action for Hospital Peer Review Decisions,* 59 How. L.J. 413, 421 (2016); *see also Larson v. Wasemiller,* 738 N.W.2d 300, 306–07, 306 n.3, 307 n.4 (Minn. 2007) (en banc) ("At least 27 states recognize the tort of negligent credentialing, and at least three additional states recognize the broader theory of corporate negligence," which encompasses the tort of negligent credentialing. (footnote omitted)).

Generally, a plaintiff must show three things to establish a negligent credentialing claim: (1) the hospital failed to exercise reasonable care in granting privileges to the physician to practice medicine, or their specialty, at the hospital; (2) the physician breached the standard of care that a reasonably competent and skilled health care professional, with a similar background and in the same medical community, would have provided while rendering medical care and treatment to the plaintiff; and (3) the hospital's failure to exercise due care in permitting their physician to practice at the facility was the proximate cause of the plaintiff's injuries.

*See generally*, Benjamin J. Vernia, Annotation, *Tort Claim for Negligent Credentialing of Physician*, 98 A.L.R.5th 533 (2002) (containing a wealth of authority on the issue); *see also Rule v. Lutheran Hosps. & Homes Soc'y of Am.*, 835 F.2d 1250, 1253 (8th Cir. 1987) (identifying the elements of a negligent credentialing claim); *Insinga v. LaBella*, 543 So. 2d 209, 214 (Fla. 1989) (same); *Frigo v. Silver Cross Hosp. & Med. Ctr.*, 876 N.E.2d 697, 723 (Ill. App. Ct. 2007) (same); *Martinez v. Park*, 959 N.E.2d 259, 272 (Ind. Ct. App. 2011) (same); *Crockerham v. La. Med. Mut. Ins.*, 255 So. 3d 604, 608 (La. Ct. App. 2018) (same); *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654–57 (Mo. 2019) (en banc) (same); *Schelling v. Humphrey*, 916 N.E.2d 1029, 1033–34 (Ohio 2009) (same).

Mercy argues the district court correctly granted its first motion for partial summary judgment because it had no duty to investigate Dr. Segal based solely on the knowledge that the IBM opened an investigation into Dr. Segal. We disagree. Mercy conflates the issues of duty and breach. The duty in this case is inherent in and created by the tort itself. To the extent there is a negligent credentialing tort, the hospital always has a duty to exercise reasonable care in granting privileges to physicians. *See Tharp*, 587 S.W.3d at 655 ("[A] hospital's undertaking—its duty—is to credential competent and careful physicians."); *see also Rule*, 835 F.2d at 1253; *Hous. Hosps., Inc. v. Reeves*, 846 S.E.2d 219, 221 (Ga. Ct. App. 2020); *Schelling*, 916 N.E.2d at 1033. A hospital must act as a reasonable hospital to satisfy the duty. Mercy's argument actually goes to whether it breached the duty of reasonable care in not conducting an investigation based solely upon receiving notice the IBM opened an investigation into Dr. Segal. The district court erred in conflating these issues and

concluding Mercy had no duty to exercise reasonable care under the circumstances.

Even though the district court erred on this point, the error is now largely academic. Whether Mercy breached the duty of reasonable care in not conducting an investigation based solely upon notice the IBM opened an investigation is no longer material to the resolution of this case. As noted above, it is no longer plaintiffs' theory of the case that Mercy breached the duty of care based solely on Mercy's failure to investigate on notice of the pending IBM charges. The plaintiffs' expert witness has opined that Mercy breached its duty of care by not initiating its own investigation in response to several other facts that should have placed Mercy on alert to inquire further, including the existence of numerous malpractice suits filed against Dr. Segal.

This brings us to whether the district court erred in granting Mercy's second motion for summary judgment on the plaintiffs' more robust theory of the case. In ruling on Mercy's second motion for summary judgment, the district court held evidence of prior malpractice suits against Dr. Segal and Dr. Pietrafesa's opinion regarding breach of the standard of care based, in part, on the prior lawsuits was inadmissible under rule 5.403. We disagree with the district court's resolution of the motion.

It is true that prior lawsuits against a defendant are generally inadmissible in medical malpractice lawsuits.

> The fact of prior litigation has little, if any, relevance to whether [a doctor] violated the applicable standard of care *in the immediate case*. The admission of evidence of prior suits, instead of aiding the fact finder in its quest, tends to excite its prejudice and mislead it.

*Lai v. Sagle*, 818 A.2d 237, 247 (Md. 2003) (emphasis added); *see also Gray v. Allen*, 677 S.E.2d 862, 867 (N.C. Ct. App. 2009) ("[E]vidence of

prior lawsuits against a defendant in a medical malpractice action is not relevant to whether a physician was negligent in the current case. Furthermore, evidence of a prior negligence action against defendants threatens substantial prejudice to the defendants." (citation omitted)).

However, evidence of prior lawsuits may be admissible under some circumstances in negligent credentialing claims because the existence of prior lawsuits may be directly relevant to the hospital's credentialing decision. *See Corrigan v. Methodist Hosp.*, 869 F. Supp. 1208, 1211 (E.D. Pa. 1994) (finding an expert's opinion criticizing the hospital for credentialing surgeons either with knowledge of, or failing to learn of, malpractice claims in their history sufficed to raise an issue of material fact that precluded summary judgment); *Mat-Su Valley Med. Ctr., LLC v. Bolinder*, 427 P.3d 754, 761 n.13 (Alaska 2018) (noting proof that the hospital should have known the physician would act negligently "generally consists of 'evidence that the physician either lacked standard credentials or previously had been the subject of a malpractice suit or disciplinary proceedings' " (quoting *Ward v. Lutheran Hosps. & Homes Soc'y of Am., Inc.*, 963 P.2d 1031, 1033 n.2 (Alaska 1998))); *Towner v. Bernardo*, 467 P.3d 17, 33 (Or. Ct. App. 2020) ("[I]t is at least plausible that a plaintiff could obtain proof from third parties, public records, or other sources to try to demonstrate that a hospital should have provided greater oversight to a surgeon who, for instance, had a history of prior negligence in particular surgeries."); *Neeble v. Sepulveda*, No. 01–96–01253–CV, 1999 WL 11710, at *6 (Tex. App. Aug. 13, 1998) (concluding the rules of evidence prohibited the introduction of prior malpractice suits in the medical malpractice action against the doctor but that evidence was admissible in the trial of the negligent credentialing claim). For example, in *Schelling v. Humphrey* the court held evidence of prior lawsuits was admissible in a negligent credentialing claim but not in the related

malpractice claim. *See* 916 N.E.2d at 1036. To prevent unfair prejudice to the physician, the court concluded a bifurcated trial was appropriate. *See id.* Bifurcation "avoids the problems of jury confusion or prejudice that may result from admitting evidence of prior acts of malpractice in a combined trial on both claims." *Id.*

Regardless, the district court incorrectly framed the question in ruling on the motion for summary judgment. The relevant question is not whether evidence of the prior lawsuits against Dr. Segal was admissible; the relevant question presented is whether Dr. Pietrafesa's opinion regarding the standard of care based, in part, on his knowledge of the prior lawsuits was admissible. On that question, we conclude Dr. Pietrafesa's opinion regarding the standard of care and breach of the standard of care was admissible.

Iowa Rule of Evidence 5.702 allows expert opinion testimony "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Iowa Rule of Evidence 5.703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

This court has recognized three possible sources from which an expert may testify: "(1) the firsthand observation by the witness; (2) from information obtained at trial through hypothetical questions or the testimony of other witnesses; and (3) the presentation of data to the expert outside of court and other than by his own perception." *Brunner v. Brown*, 480 N.W.2d 33, 34 (Iowa 1992). The facts need not be admissible in evidence so long as they are "of a type reasonably relied on by other experts in the field." *Id.* at 35. Whether the underlying facts are of a type

reasonably relied upon is decided by the court. *See id.* The proponent must demonstrate that the information is customarily relied upon by experts in their field and that such information is sufficiently reliable. *See State v. Neiderbach*, 837 N.W.2d 180, 205 (Iowa 2013); *Franzen v. Kruger*, No. 18–0850, 2019 WL 4678152, at *4–5 (Iowa Ct. App. Sept. 25, 2019).

The grounds for admissibility have been satisfied here. There is no dispute evidence of prior lawsuits filed against Dr. Segal are reliable—one could easily verify the previous claims. The second determination is whether other experts in the medical field would rely on prior lawsuits in determining whether a hospital was negligent in credentialing its physician. We conclude they would. *See, e.g., Corrigan*, 869 F. Supp. at 1211; *Mat-Su Valley Med. Ctr., LLC*, 427 P.3d at 761 n.13; *Malcolm v. Duckett*, No. L–10–1110, 2011 WL 686398, at *7 (Ohio Ct. App. Feb. 25, 2011) (allowing the expert to conclude "two or more deaths due to negligence is sufficient to establish a 'pattern' which should put the credentialing hospital on notice that there may [be] a problem with that physician's performance"); *Towner*, 467 P.3d at 33; *Neeble*, 1999 WL 11710, at *6. Thus, Dr. Pietrafesa's opinion testimony, even if it relied on the fact that Dr. Segal had previously been sued in Iowa, Maryland, and New York, was admissible.

Assuming the existence of the tort, we also conclude Dr. Pietrafesa's opinion, as a whole, as expressed in his affidavit and expert disclosures, created a disputed issue of material fact. *See Brookins v. Mote*, 292 P.3d 347, 364 (Mont. 2012) ("The plaintiff in a negligent credentialing claim must present expert testimony establishing that the defendant deviated from the applicable standard of care to raise a genuine issue of material fact."). As relevant here, the summary judgment record shows Dr. Pietrafesa would have testified as follows:

[W]hen the Iowa Board of Medicine subpoenas records and/or credentialing information and/or complication rates of a surgeon from a hospital, if the doctor in question has had multiple lawsuits filed against him over a span of years . . . , and if the Iowa Board of Medicine is investigating multiple complaints based on care over many years against the same physician . . . , and if the care in question from those complaints was so substandard as to require the doctor to be sent to a program for a competency evaluation . . . , and if the physician affirmatively tells the hospital that he has received multiple inquiries from the Iowa Board of Medicine as it related to his care . . . , the standard of care requires the hospital to contact the doctor and conduct their own investigation into the doctor's competency. The evidence in this case, however, is that Mercy did *nothing* in response to this information . . . .

Dr. Pietrafesa also opined that in failing to respond, Mercy breached the standard of care. He further opined if Mercy had not breached the standard of care, it would have, more likely than not, restricted or suspended Dr. Segal's privileges.

We thus conclude the district court erred in granting Mercy's second motion for summary judgment. The district court erred in ruling Dr. Pietrafesa's expert opinion evidence regarding the standard of care based, in part, on prior lawsuits was inadmissible in a negligent credentialing claim. The opinion evidence was relevant to show Mercy should have known Dr. Segal posed a serious risk to his patients and Mercy was negligent in granting and maintaining his surgical privileges at its facilities.

V.

We vacate the decision of the court of appeals and reverse the judgment of the district court and remand this matter for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**