STATE of Iowa, Appellee,

v.

Gary VENZKE, Appellant.

No. 96–2058.

Court of Appeals of Iowa.

Dec. 29, 1997.

John J. Hines of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor and James Kivi, Assistant Attorneys General, and Allan W. Vanderhart, County Attorney, for appellee.

Heard by STREIT, P.J., and VOGEL and MAHAN, JJ.

VOGEL, Judge.

The defendant, Gary Venzke, appeals his conviction for first-degree murder in violation of Iowa Code section 707.2(1) (1995). The case was tried to the court. He argues the trial court erred in requiring him to prove his insanity at times other than when the act was committed. He also claims the record does not support the trial court's rejection of his insanity defense.

***Background facts.*** Venzke had a long history of treatment for mental illness dating back to the 1970s. He was also diagnosed as having paranoid schizophrenia.[1] Venzke believed his wife of twenty-three years was the anti-Christ. On November 8, 1995, he made preparations to murder her. He gathered the following tools: a large open-ended wrench, a kitchen butcher knife, a ballpeen hammer, an ice pick, and tin snips. Venzke struck his wife in the head over fifty times with a large crescent wrench and then stabbed her body with a butcher knife. Later that day he was arrested and charged with first-degree murder.

**I. Mental state.** Our scope of review is on assigned error. Iowa R.App. P. 4; *State v. Wheeler*, 403 N.W.2d 58, 60 (Iowa App. 1987). Venzke argues the trial court erred in requiring the defense to prove his insanity at times other than when the act was committed.[2] Venzke relies on the interpretation of the M'Naghten Rule, as codified in Iowa Code section 701.4. This rule provides in relevant part:

A person shall not be convicted of a crime if at the time the crime is committed the person suffers from such a disease or deranged condition of the mind as to render the person incapable of knowing the nature and quality of the act the person is committing or incapable of distinguishing between right and wrong in relation to that act. Insanity need not exist for any specific length of time before or after the commission of the alleged criminal act. *Id.*

We first note there is no dispute Venzke suffered from paranoid schizophrenia. However, the trial court took into account expert testimony when it concluded, "Not all paranoid schizophrenics are unable to distinguish right from wrong, nor are all paranoid schizophrenics incapable of knowing the nature and quality of the act they are committing."

When determining criminal intent, "[t]he condition of the mind [at the time the crime is committed] is rarely susceptible of direct proof but it depends upon many factors. It may be inferred from outward acts and attending circumstances." *State v. Straw*, 185 N.W.2d 812, 814 (Iowa 1971); *State v. Salkil*, 441 N.W.2d 386, 388 (1989). It follows that courts also look to surrounding circumstances when trying to determine whether a defendant knew the nature and quality of his acts or could distinguish between right and wrong in relation to his acts at the time the crime was committed.

For example, in *State v. Wheeler*, 403 N.W.2d 58, 61–62 (Iowa App.1987), the court looked to defendant's acts *after* the crime to determine "he understood the nature of his acts and to some degree knew his actions were wrongful." *Id.* After the defendant shot and beat his father, he hid the gun, fled from Iowa, refused to tell his sister his whereabouts, and was generally evasive *after* committing the crimes. *Id.* The court considered this adequate circumstantial evidence supporting he was not insane during the commission of the crimes. *Id.* The court went on to conclude "defendant's conduct and statements also acknowledge he was capable of distinguishing right from wrong." *Id.* After the shooting he indicated to his sister he knew he killed his father and knew he was in trouble. *Id.*

---

1. This illness is a biologically-based brain disease. Its symptoms include delusions and hallucinations which vary in their level of severity. Paranoid schizophrenia is treated through administration of anti-psychotic medications. We note Venzke was no longer on anti-psychotic medication as of September 1995; the murder took place in November 1995.

2. The district court concluded, "The Defendant has not proven by preponderance of the evidence that the Defendant was insane *at the time* that he killed Janine Venzke." (Emphasis added.)

■ Additionally, in *State v. Fetters,* 562 N.W.2d 770, 773–74 (Iowa App.1997), we recognized that defendant's "precise planning and deception in the execution of her plan [to murder her aunt] and statements she made after the killing ... reflected she understood what she had done." Defendant's insanity defense pursuant to Iowa Code section 701.4, was therefore rejected based on the attendant circumstances and defendant's statements concerning the murder. Similarly in this case, the district court correctly considered Venzke's actions before and after the murder to determine Venzke was capable of understanding killing his wife was wrong. The surrounding circumstances are probative of Venzke's state of mind at the time of the killing. Venzke took the day off from work on November 8, 1995, to plan the murder. He gathered the tools he would use, promulgating the method by which he would kill his wife when she returned from work. Venzke made sure his son went over to a friend of the family's after school to spare his son from seeing the brutal killing. He also took the time to place the protective family dog in the storage room so that he would not be traumatized. Venzke then sat and waited on the couch in the basement for his wife to arrive.

After Venzke murdered his wife, he ran toward the family's church, of which he was a member, and on the way shed his blood-soaked dress shirt and stuffed it behind a bush in a neighbor's front yard. He later told authorities he assumed he would either be raptured to heaven after the killing *or be put in jail.* He knew what he did was wrong and understood the legal consequences as well. One witness heard Venzke shouting outside the church, "seventy times seven," reflective of a Bible verse where Jesus told his followers that they were to *forgive* others not once, but seventy times seven. The trier of fact could reasonably infer from Venzke's statements about forgiveness that he could understand the killing was a wrongful act.

We further note Venzke does not cite any Iowa case law upon which he claims the court applied an incorrect legal standard by elevating or expanding the burden of proof for the defense. In any event, we find the argument

without merit. We therefore determine Venzke's statements prior to and following the killing were probative of Venzke's state of mind, and were properly considered by the trier of fact.

■ **II. Rejection of insanity defense.** When considering a challenge to the district court's rejection of an insanity defense, the scope of review is on assigned error only. *Wheeler,* 403 N.W.2d at 60. A reviewing court will uphold the verdict where there is substantial evidence in the record tending to support the charge. *Id.* As the reviewing court, we are not to determine anew the weight to be given trial testimony; the credibility of witnesses and the credence to be given their testimony is a function of the trier of fact. *Id.* at 61.

■ Venzke argues the record when viewed in its entirety does not support the trial court's rejection of the insanity defense. The defense produced two experts, Dr. Winokur and Dr. Napolus, who believed that at the time of the killing, Venzke was not capable of distinguishing right from wrong in the legal sense. The State produced one expert, Dr. Taylor, who testified Venzke was "fully aware of what he had done" and that his ability to differentiate right from wrong or understand the nature and quality of his act was not impaired by his illness.

■ We note the trial court as trier of fact is not obligated to accept opinion evidence, even from experts, as conclusive. *State v. Brown,* 470 N.W.2d 30, 33 (Iowa 1991). When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as the district court is in a better position to weigh the credibility of the witnesses. *See Payton Apartments, Ltd. v. Board of Review of the City of Des Moines, Iowa, et al.,* 358 N.W.2d 325, 329 (Iowa App.1984); *accord Wheeler,* 403 N.W.2d at 61; *Excel Corp. v. Pottawattamie County Bd. of Review,* 492 N.W.2d 225, 229 (Iowa App.1992).

Venzke wanted to "take responsibility" for his actions, was aware he might go to jail, told law enforcement officials he "committed the murder" and that he left all his weapons "at the scene of the crime." The trial court

found these statements as indicative of statements coming "from a person who is aware that he is doing something wrong and must face the consequences of his acts. They would not come from a person whose delusion 'did not include any consideration of human law.' Defendant was aware that he had committed an act which was contrary to the law." After weighing the circumstances surrounding the crime, the trial court concluded Venzke's delusions and hallucinations were not sufficiently severe as to render him insane under the *M'Naghten* codified definition. We agree and find no reason to disturb this finding on appeal.

Additionally, the testimony of Dr. Taylor is particularly telling:

[Venzke has] said earlier, I could go to jail. He has said, I'm not going to get to heaven, and again another example of his knowing exactly what he did, I've killed the mother of my children. He didn't say, I've killed the anti[C]hrist and saved Matthew from sexual abuse. He didn't say, I've saved the city of Independence from this demon I've just killed. He simply says what actually happened, I've killed the mother of my children.

In considering this testimony, and the record in its entirety, including the testimony of other experts and the surrounding circumstances of the murder, we are unable to find the trial court erred in rejecting Venzke's insanity defense.

Having carefully considered all issues on appeal, we affirm the decision of the trial court finding Venzke guilty of murder in the first degree.

**AFFIRMED.**