# IN THE COURT OF APPEALS OF IOWA

No. 16-1088
Filed August 16, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PATRICK WILLIAM KIRWAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

        A defendant appeals his conviction for murder in the second degree.
**AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

"I did something bad," Patrick Kirwan repeatedly told his estranged girlfriend after he fatally shot their neighbor, Mark Hruska. Kirwan stood trial for first-degree murder—advancing justification, diminished responsibility, and insanity as defenses. The jury returned a verdict of second-degree murder. On appeal, Kirwan raises four issues: (1) the verdict was not supported by the evidence, (2) the district court wrongfully excluded his expert's written report, (3) the jury should have been instructed on the consequences of a not-guilty-by-reason-of-insanity verdict, and (4) defense counsel was ineffective for not objecting to assertions about the crime scene in the State's closing argument.

First, reviewing the evidence in the light most favorable to the State, we find substantial evidence to support the jury's verdict. We also find counsel performed competently despite not moving for a new trial based on the weight of the evidence. Second, we find the exclusion of the defense expert's report did not amount to reversible error. Third, as the court of appeals, we cannot revisit our supreme court's decision in *State v. Becker*, 818 N.W.2d 135, 137 (Iowa 2012),[1] which found no error in the denial of a jury instruction explaining the consequences of an insanity verdict. Fourth and finally, after reviewing the entirety of the trial transcript and the exhibits, we conclude Kirwan cannot show he was prejudiced by trial counsel's failure to object during the State's closing

---

[1] In *Alcala v. Marriott International, Inc.*, our supreme court overruled a line of cases, including *Becker*, which articulated an abuse-of-discretion standard for reviewing a trial court's refusal to give a requested jury instruction; *Alcala* clarified that absent a discretionary component, review is for correction of errors at law. 880 N.W.2d 699, 708 n.3 (Iowa 2016).

argument.  Rejecting all four grounds for relief, we affirm Kirwan's conviction for murder in the second degree.

## I.        Facts and Prior Proceedings

At age nineteen, Kirwan joined the Army and served a fourteen-month tour of duty in Iraq between 2004 and 2006.  After returning home, he was diagnosed with post-traumatic stress disorder (PTSD).  Kirwan sought treatment for his PTSD through the VA Health Care System and was hospitalized at least twice, once in Iowa City and more recently in Des Moines.

For four-and-one-half years before March 1, 2015, Kirwan had a romantic relationship with Jennifer Kizer.  They lived together with their daughter on the east side of Des Moines.  Kirwan and Kizer socialized with their next-door neighbor, Mark Hruska.  On occasion, all three would have cookouts or smoke marijuana together.  But Kirwan harbored a darker view of Hruska.  According to Kizer: "[Kirwan] thought that Mark was an FBI agent.  He thought that Mark was watching our house or throwing rocks at our house.  He also accused me of having a relationship with Mark."

Kizer testified Kirwan's paranoid thoughts escalated after his stay at the Central Iowa VA Health Center in late December 2014.  "Within the months of January and February, it was really bad."  The night of February 28, 2015, was especially fitful for Kizer.  Kirwan kept waking her up, haranguing her about his suspicions.  The next morning, March 1, she was "mentally drained" and decided to leave.  She called her mother to help move her belongings.  Kizer left with their daughter around 11:00 a.m.  She recalled Kirwan was "apologetic to my mom

and manipulating me nicely." Kizer called Kirwan after lunch to see how he was and he seemed "fine."

Then at about 5:00 p.m., Kizer received a phone call from Kirwan. "He was screaming at me telling me, 'I did something bad. I did something bad. You need to come here.'" Kizer, who was holding their daughter, handed the cell phone to her mother. Her mother asked Kirwan what he did, and he replied: "[T]he neighbor . . . Mark's not okay." Kizer's mother called 911 to report the situation.

Responding police officers noticed blood in the driveway and found Hruska's dead body inside his entry way. The officers noticed activity next door and asked the dispatcher to call Kirwan. The dispatcher asked Kirwan to come out of his house without a weapon and with his hands in the air. Kirwan asked: "Am I going to jail?" He also said he was "feeling pretty suicidal." Kirwan then volunteered that he never had "anything against him" but just wanted to "go buy some marijuana." Kirwan admitted shooting his neighbor after they got into a fight and said: "[H]e is no longer with us." Kirwan also told the dispatcher: "It's just he's really an asshole."

Kirwan peacefully surrendered to police, leaving his Glock .40 caliber pistol on his kitchen floor. Eight casings from the crime scene next door matched that weapon. An autopsy revealed Hruska's cause of death was multiple gunshot wounds.

Kirwan agreed to an interview with Des Moines Police Detective Brad Youngblut. Kirwan admitted shooting Hruska, explaining, "[W]e haven't really gotten along, at least as neighbors." Kirwan said he "went over there to ask for

some weed" and Hruska "kind of snapped" on him. Kirwan told the detective: "I've never wanted to kill somebody, but it happened." Kirwan said after the shooting he "panicked" and went back home. He "lit a cigarette" and "took a shower." Kirwan said when he had smoked his last cigarette he went to the grocery store to buy more, before calling Kizer.

The State charged Kirwan with murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2 (2015). He gave notice he intended to rely on three defenses: insanity, diminished responsibility, and justification. His jury trial started in early April 2016. After several days of testimony, the jury found Kirwan not guilty of murder in the first degree but guilty of murder in the second degree. He now appeals.

## II.    Scope and Standards of Review

We review Kirwan's substantial-evidence claim, preserved by his motions for judgment of acquittal, for errors at law. *See State v. Hawkins*, 620 N.W.2d 256, 258 (Iowa 2000). We view the record in the light most favorable to the State, and we allow all legitimate inferences and presumptions that may be reasonably deduced from the evidence. *See State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (quoting *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994)).

We apply a de novo review to Kirwan's claims that his trial attorney was constitutionally deficient in not moving for a new trial based on the weight of the evidence and not objecting during the State's closing argument. *See State v.*

*Harris*, 891 N.W.2d 182, 185 (Iowa 2017). Kirwan bears the burden of proving (1) counsel failed to perform essential duties and (2) that failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

We engage in a hybrid review when considering the district court's exclusion of the report authored by psychologist Steven Bruce. Generally, we review hearsay challenges for errors at law, but when the question involves the expert-opinion rule, we review for an abuse of discretion. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). Abuse of discretion is also the standard applied to the exclusion of evidence deemed cumulative. *See* Iowa R. Evid. 5.403 (allowing judges to exclude relevant but cumulative evidence).

### III.     Analysis of Kirwan's Claims

### A.  Proof of Criminal Responsibility

Kirwan disputes both the sufficiency of the State's evidence and its weight. The first challenge was preserved;[2] the second was not. Accordingly, Kirwan argues the second point as a claim of ineffective assistance of counsel.

---

[2] The State contends Kirwan failed to preserve error on his appellate claim that at the time of the shooting, he was insane as a matter of law. We reject the State's contention. Defense counsel challenged the malice-aforethought element in the motion for judgment of acquittal following the State's case in chief. Evidence of insanity may negate the element of malice aforethought under Iowa law. *Anfinson v. State*, 758 N.W.2d 496, 503 (Iowa 2008). Moreover, defense counsel argued in a renewed motion at the close of all evidence that Kirwan "did not understand the difference between right and wrong." Given that insanity is an affirmative defense under Iowa Code section 701.4 and Iowa Rule of Criminal Procedure 2.11(11)(b)(1), it is more realistic to expect the defense to urge the question of insanity after resting its own case. Here, the district court denied Kirwan's renewed and expanded motion for judgment of acquittal.

### 1. Sufficiency of the Evidence

The jury acquitted Kirwan of murder in the first degree but found the State offered proof beyond a reasonable doubt of murder in the second degree, marshaled as follows:

> 1. On or about the 1st day of March, 2015, the defendant, without justification, shot Mark Hruska.
> 2. Mark Hruska died as a result of being shot.
> 3. The defendant acted with malice aforethought.

The instructions defined malice aforethought as "a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time."

Kirwan applauds the jury's acceptance of his claim of diminished responsibility[3] but argues he was further entitled to a verdict of not guilty by reason of insanity.[4] He highlights the testimony of clinical psychologist Steven

---

[3] The jury received the following instruction:

"Diminished responsibility" means a mental condition which does not allow the person to form a premeditated, deliberate, specific intent to kill.

"Diminished responsibility" does not entirely relieve a person of the responsibility for his actions and is not the same as an insanity defense.

You should determine from the evidence if the defendant was capable of premeditating, deliberating, and forming a specific intent to kill.

If you have a reasonable doubt the defendant was capable of acting deliberately, with premeditation, and specific intent to kill, then the defendant cannot be guilty of first-degree murder. You should then consider the lesser included charges.

[4] The Iowa legislature enacted the M'Naghten standard for insanity:

A person shall not be convicted of a crime if at the time the crime is committed the person suffers from such a diseased or deranged condition of the mind as to render the person incapable of knowing the nature and quality of the act the person is committing or incapable of distinguishing between right and wrong in relation to that act. Insanity need not exist for any specific length of time before or after the commission of the alleged criminal act. If the defense of insanity is raised, the defendant must prove by a preponderance of the evidence that the defendant at the time of the crime suffered from such a deranged condition of the mind as to render

Bruce, who diagnosed Kirwan with severe PTSD as a result of Kirwan's combat experience in Iraq and with schizoaffective disorder. Dr. Bruce "opined Kirwan's paranoid delusions made him incapable from distinguishing between right and wrong" on the date of the killing.[5] Kirwan contends his own recognition that "he did 'something bad' was not to the contrary," because, according to Dr. Bruce, "Kirwan could recognize he did something bad but still believe he was justified[6] in doing so."

At trial, the State offered rebuttal testimony from Dr. Michael Taylor, who believed Kirwan was "fully capable of understanding the difference between right and wrong as it pertained to his acts" on the day of the shooting. Dr. Taylor acknowledged Kirwan's PTSD diagnosis, but he told the jury "the fact that an individual suffers from a psychiatric illness does not automatically make that individual legally insane." In support of his opinion, Dr. Taylor noted Kirwan's decision to go armed to his neighbor's house, in light of Kizer's statement that since Kirwan's December 2014 hospitalization it was unusual for him to carry his

---

the defendant incapable of knowing the nature and quality of the act the defendant was committing or was incapable of distinguishing between right and wrong in relation to the act.

Iowa Code § 701.4; *see State v. Harkness*, 160 N.W.2d 324, 329 (Iowa 1968) ("History shows the M'Naghten test in 1843 replaced and supplanted the ancient 'right and wrong' test." (citation omitted)).

[5] To be found not guilty by reason of insanity the defendant must show he was *either* (1) incapable of knowing the nature and quality of the act *or* (2) incapable of distinguishing between right and wrong in relation to the act. Iowa Code § 701.4. "The defendant must also show that a diseased or deranged condition of the mind rendered him incapable of having the relevant knowledge for making the relevant distinction." *Becker*, 818 N.W.2d at 144.

[6] Notwithstanding this reference to his belief that he was "justified" in shooting Hruska, Kirwan does not advance his justification defense on appeal. Significantly, Kirwan's subjective belief alone would not support a justification defense; "the test of justification is both subjective and objective. The actor must actually believe that he is in danger and that belief must be a reasonable one." *State v. Elam*, 328 N.W.2d 314, 317 (Iowa 1982).

gun. The psychiatrist also found it significant that Kirwan showered and changed his clothes after the shooting. In addition, Dr. Taylor pointed to Kirwan's "well-organized" thoughts during the recorded interview with detective Youngblut.

The jury was entitled to reject the opinion of Dr. Bruce in favor of the views of Dr. Taylor. A trier of fact is not obliged to accept expert opinions as conclusive. *State v. Venzke*, 576 N.W.2d 382, 384 (Iowa Ct. App. 1997). When, as here, a case involves conflicting expert testimony concerning insanity, appellate courts generally defer to the jurors' first-hand opportunity to sort out the truth. *Cf. State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) (noting judge as trier of fact was in better position to weigh credibility of expert witnesses).

In addition to weighing the expert opinions, the jury was free to consider Kirwan's admissions to his girlfriend that he "did something bad" as the first of several statements revealing his understanding that shooting Hruska was wrong. For example, Kirwan told the police dispatcher that he wanted to cooperate but was "so afraid of going to jail and losing [his] family forever." In an interview with detective Youngblut later that day, Kirwan said he "just couldn't believe" what he'd done and "asked God for forgiveness." Our court has previously held that a trier of fact may reasonably infer from a defendant's statements about forgiveness that "he could understand the killing was a wrongful act." *Venzke*, 576 N.W.2d at 384. The State presented substantial evidence to rebut Kirwan's assertion he was "incapable of distinguishing between right and wrong" in relation to the shooting.

The State also presented substantial evidence to show Kirwan's actions were motivated by malice. He went next door carrying a pistol and used it to

shoot Hruska at close range. A jury may infer malice aforethought from the use of the dangerous weapon. *See State v. Green*, 896 N.W.2d 770, 781 (Iowa 2017). Kirwan also expressed a dislike for Hruska and voiced suspicions about Hruska to Kizer. In the recorded call with the dispatcher, Kirwan calls Hruska "an asshole." Kirwan told the detective he suspected Hruska may have been involved with Kizer, prompting her decision to leave. Substantial evidence supports the jury's guilty verdict on the lesser-included offense of murder in the second degree.

### 2. Weight of the Evidence

Kirwan next argues the guilty verdict was against the weight of the evidence under Iowa Rule of Criminal Procedure 2.24(2)(b)(6). Kirwan claims his trial counsel was ineffective in bypassing that argument. When a defendant chooses to raise an ineffective-assistance-of-counsel claim on direct appeal, we may either determine the record is adequate and decide the claim or find the record is inadequate and preserve the claim for postconviction proceedings. *See State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011). We find the record is adequate to reach Kirwan's ineffective-assistance-of-counsel claim.

Had counsel brought a weight-of-the-evidence challenge under rule 2.24(2)(b)(6), the district court would have decided whether "a greater amount of credible evidence" supported one side of the issue over the other side. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) (citation omitted). While district courts have wide discretion in deciding new trial motions, they must exercise such discretion "carefully and sparingly" as not to "lessen the role of the jury as the principal trier of the facts." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

A new trial should only be granted in "exceptional cases" where the evidence "preponderates heavily against the verdict." *Reeves*, 670 N.W.2d at 202 (citation omitted).

To prove the requisite prejudice, Kirwan must show, had his attorney moved for a new trial under *Ellis*, a reasonable probability existed the district court would have found his to be the exceptional case meriting relief. *See Neitzel*, 801 N.W.2d at 626. Kirwan falls short of that showing here.

Kirwan suggests a weight-of-the-evidence challenge would have proved "particularly useful given the conflicting evidence related to [his] claim of insanity." Kirwan also argues Dr. Taylor's credibility was lacking because (1) he had surrendered his medical license based on action by the medical board concerning improper recordkeeping and (2) Dr. Taylor spent less than forty-five minutes interviewing Kirwan.

Kirwan's trial was not the kind of case where "the evidence supporting a guilty verdict was so scanty, or the evidence opposed to the guilty verdict so compelling" that the verdict could be seen as contrary to the greater weight of the evidence. *See State v. Adney*, 639 N.W.2d 246, 253 (Iowa Ct. App. 2001). Each side presented credible expert evidence on the issue of insanity. Dr. Taylor's poor recordkeeping did not reflect on his expertise in psychiatry. Moreover, the brevity of his interview with Kirwan did not undermine the reliability of his opinion, given the expert's thorough review of police reports and interviews, as well as extensive medical records regarding Kirwan's care. Kirwan is unable to establish a reasonable probability the district court would have granted a new trial had his attorney filed a rule 2.24(2)(b)(6) motion.

**B. Exclusion of Expert's Report**

Kirwan next argues "the district court erred and abused its discretion in refusing to admit the defense expert's report." Dr. Bruce compiled an eleven-page assessment of Kirwan based upon the expert's review of the case materials, as well as interviews and depositions of people with knowledge about Kirwan. The State objected to its admission, arguing the report contained numerous hearsay statements and was cumulative to Dr. Bruce's in-court testimony. The State was particularly concerned with the report's quotations from Kizer and from Kirwan's mother, who was not called as a witness at trial.[7]

Defense counsel responded that the report summarized what Dr. Bruce "did in arriving at his medical diagnosis. . . . This report really does not document anything else other than what Dr. Bruce testified to." Defense counsel asserted the report was admissible under Iowa Rule of Evidence 5.803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment.[8]

The district court ruled:

> To the extent that the report contains information that Dr. Bruce has already testified to, it's cumulative. To the extent that the report contains statements of others, it is inadmissible hearsay. There isn't an exception—there is not an exception that covers that, so bottom line is the report doesn't come in.

---

[7] Here is one passage from the report:
> During an interview with Patrick's mother, she noted that Patrick had a complete "psychotic break" that just continued to get worse after returning from Iraq. She indicated that he was "completely paranoid, that the CIA was following him everywhere he went," that "everything was being recorded somehow" and his neighbor was providing information to the CIA because Patrick "knew things." She stated that nothing she could say would make him think otherwise.

[8] Neither party discussed the possibility that the report could have been redacted to remove any inadmissible hearsay statements.

On appeal, Kirwan relies on *Brunner v. Brown* for the principle that the facts or data underlying an expert's opinion are admissible, even if they constitute hearsay. 480 N.W.2d 33, 35 (Iowa 1992). He argues excluding such evidence would deprive the jury of the chance to fully consider the reasons supporting the expert's opinion. *See id.* Kirwan also reiterates the claim that the hearsay statements in Dr. Bruce's report are admissible under rule 5.803(4).

We first consider whether the hearsay statements in the excluded exhibit fit the exception that allows the fact finder to consider out-of-court statements that are made for and are reasonably pertinent to "medical diagnosis or treatment" and that describe "medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations." Iowa R. Evid. 5.803(4). This exception imposes two requirements: (1) the motive and purpose behind the declaration must be to obtain a reliable diagnosis and treatment for a medical condition and (2) the content must be the kind of information generally relied upon by a medical professional. *See State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016).

This hearsay exception "does not require the statement to be made by the person to be diagnosed or treated." *State v. Long*, 628 N.W.2d 440, 444 (Iowa 2001). "Third persons who have a strong motivation to obtain satisfactory treatment or diagnosis for a person in a close relationship, such as a parent or spouse, would ordinarily be motivated to be truthful." *Id.* But the declarant's primary motivation must be to obtain effective diagnosis or treatment for their family member. *Id.* at 444, 447 (asking rhetorically "what about a declarant

whose motivation is not clearly to receive effective treatment for another but possibly to suppress or twist the truth to accomplish the declarant's own ends?").

In reviewing the record, we find no error in the district court's conclusion that the hearsay statements contained in the report did not satisfy the exception under rule 5.803(4). Kirwan did not establish the out-of-court statements by Kizer and Kirwan's mother quoted in Dr. Bruce's report were made with the primary motivation to obtain an effective diagnosis for Kirwan; Kirwan's PTSD had been diagnosed and treated on and off for years. The declarants likely intended the statements to assist the expert hired for Kirwan's criminal defense. We agree the statements were inadmissible hearsay.

Our second task is to decide if the district court abused its discretion in excluding the written report under the *Brunner* principles. *See Brunner*, 480 N.W.2d at 35–37. In *Brunner*, our supreme court held hearsay evidence that provides the foundation for an expert's opinion may be admitted under Iowa Rules of Evidence 5.703 and 5.705. *Id.* But the court did caution, "[i]f the underlying evidence is furnished by a biased witness, it probably will be excluded." *Id.* at 35. (citing *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 622–24 (8th Cir. 1986) (finding reversible error in admitting investigating police officer's opinion based on interview with the driver of one of the vehicles involved)). In *Brunner*, the court ultimately determined the trial court did not abuse its discretion in excluding the underlying hearsay evidence. *Id.* at 37.

Even if the out-of-court statements from Kirwan's mother and his former girlfriend were admissible for the limited purpose of showing the basis for the expert's opinion, we cannot find Kirwan was prejudiced by the district court's

decision to exclude the written report. If the district court would have admitted the report, a limiting instruction would have been appropriate. *See Brunner*, 480 N.W.2d at 37. Because the court would have instructed the jury not to consider the out-of-court statements for the truth of the matter asserted, the probative value of the statements would have been limited. The value in admitting the report would have been to establish the fact of the interview to bolster the foundation for Dr. Bruce's opinion. But Dr. Bruce testified regarding the basis for his opinion, including the fact he interviewed Kirwan's mother and former girlfriend, bolstering Kirwan's diminished capacity and insanity defense.

Defense counsel acknowledged at trial the report did not "document anything else other than" Dr. Bruce's testimony. His written report would have contributed little to the defense expert's opinion on insanity and was cumulative of his live testimony. *See State v. Putman*, No. 12-0022, 2013 WL 3456973, at *4 (Iowa Ct. App. July 10, 2013), *aff'd*, 848 N.W.2d 1, 3 (Iowa 2014). The exclusion of the report did not amount to reversible error.

### C. Consequence Instruction

Kirwan asked the district court to instruct the jury as follows: "Upon a verdict of not guilty by reason of insanity, the defendant will be committed to a state mental health institute or other appropriate facility for a complete psychiatric evaluation." The district court declined. In the routing statement for the appellant's brief, Kirwan asked the supreme court to retain this case to "revisit its opinion" in *Becker*, 818 N.W.2d at 147–63, in regard to instructing the jury on the consequence of a verdict finding him not guilty by reason of insanity.

The argument in Kirwan's opening brief is directed at the supreme court, asking it "to exercise its supervisory authority over lower courts to permit them the discretion to provide a consequence instruction upon a defendant's request." *See State v. Dahl*, 874 N.W.2d 348, 353 (Iowa 2016) (citing article V, section 4 of the Iowa Constitution). Because our supreme court transferred the case to us, that argument must wait for another day.

The State argues *Becker* addressed the same research and policy arguments raised by Kirwan and nothing in the five years since *Becker* was decided merits a departure by the courts. In his reply brief, Kirwan notes "nothing in *Becker* created an absolute prohibition" on giving a consequences instruction.

*Becker* outlined Iowa case law critical of consequence instructions. 818 N.W.2d at 155. The court concluded Becker had not shown a due-process violation. *Id.* at 163. The *Becker* court was also concerned about the content of the proposed consequence instruction, which was the same as proposed by Kirwan here. *See id.* at 162. *Becker* left open the possibility that "due process may require a consequence instruction 'under certain limited circumstances'" but did not find those circumstances in that case. *Id.* at 163 (citation omitted). Kirwan does not argue such circumstances arise in his case. Accordingly, our hands are tied by the analysis in *Becker*. We find no error in the district court's refusal to give the consequence instruction.

### D. Alleged Prosecutorial Misconduct or Error

As a final ground for reversal, Kirwan alleges his attorney performed below professional norms in failing to object during the State's closing argument.

Specifically, Kirwan finds objectionable a passage where the prosecutor discusses crime-scene-reconstruction and blood-splatter evidence when the State did not call an expert on those matters.

We provide a partial excerpt of the challenged argument here:

> While we can't sequence the shots, I'm going to suggest to you, use your reason and common sense and as these instructions will tell you to do, reach deductions and conclusions that reason and common sense will tell you.
> Mark, we know—we know this from the evidence. Mark was at the top of the stairs when the bloodletting began. We know that; right? Why do we know that? Common sense. Look at this blood drop (indicating), ladies and gentlemen. Straight down. Straight blood. Mark had to be standing on the top for those blood drops.

On appeal, Kirwan accuses the prosecutor of "testifying about an area often left to experts" and asserts the argument constituted "misconduct, or at the very least, error."

To determine whether trial counsel was ineffective in failing to object to this argument, we must first determine whether the prosecutor engaged in either misconduct or error. *See State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (describing "prosecutorial misconduct" as an intentional or reckless violation of a clear standard and "prosecutorial error" as the exercise of poor judgment or an excusable mistake). Prosecutors are entitled to "some latitude during closing argument in analyzing the evidence admitted in the trial." *State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003) (quoting *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)). After reviewing the entirety of the trial transcript and the exhibits, we conclude Kirwan cannot show he was prejudiced by trial counsel's performance. His attorney chose to challenge the prosecutor's inferences in the defense closing argument:

What happened on this day, and no one can be specifically—perfectly clear, and I'm going to tell you, [the prosecutor], when he was talking about, Well, this blood droplet says that this man was standing right here, guess what? You all know this. That man, he is not a reconstruction expert. He is not a blood spatter expert.

He can't—and and they didn't bring a single person in here to sit down and say, Here's where Mark Hruska was standing when this happened. Here's where Patrick Kirwan was standing when this happened, and it's suggested by the blood over here and the blood over here and the bullet holes here. None of that came in. The reason why it didn't come in is because there is no expert that could come in and testify to that.

Defense counsel urged the jurors to focus more on Kirwan's mental state than how the shooting unfolded. And the defense was successful in convincing the jury that Kirwan lacked the ability to form the specific intent and premeditation necessary to commit first-degree murder. On this record, Kirwan cannot show his counsel was ineffective.

## IV. Conclusion

Because the verdict was supported by substantial and credible evidence, the district court's exclusion of Dr. Bruce's written report did not amount to reversible error, the district court did not err in declining to give a consequence instruction, and Kirwan did not prove ineffective assistance of counsel, we affirm his conviction for murder in the second degree.

**AFFIRMED.**