# IN THE COURT OF APPEALS OF IOWA

No. 20-0149
Filed January 12, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KYLE ANDREW HATTRUP,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Kyle Hattrup appeals his convictions and sentences for multiple crimes. **AFFIRMED.**

Adam R. Junaid of Frerichs Law Office, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

Kyle Hattrup suffered head trauma a number of times from birth through high school. He received mental-health treatment and medication over the years as a result. Throughout his adult years, he had a number of episodes of explosive anger. On December 18, 2015, Hattrup had one of those episodes. He broke items in his house, went to his parents' house, broke some of their property, and returned home to go to bed. The next day, he took gasoline and matches to his parents' house, poured the gas in their garage, and lit it, starting a fire. His uncle, who lived next door to his parents, called the police. When he heard his uncle talking to the police, Hattrup tried to leave. When his mother tried to stop him, he struck her. He returned home to find his live-in girlfriend had locked him out of the house. As he tried to break his way in through the back door, his girlfriend left out the front door where she met police officers arriving at the scene. Hattrup grabbed a shotgun from his bedside, stepped onto the front porch, "racked" a shell into the chamber, and pointed it in the direction of the police officers. The situation was eventually resolved peacefully when Hattrup took the shotgun back in the house, came out with his hands up, and followed police orders to lie down. After being arrested, Hattrup apologized to the officers.

This incident resulted in multiple criminal charges against Hattrup. At trial, he asserted defenses of diminished responsibility and insanity. The jury rejected Hattrup's defenses and found him guilty of assault while displaying a dangerous weapon,[1] interference with official acts while armed with a firearm,[2] and reckless

---

[1] *See* Iowa Code §§ 708.1(2)(c), 708.2(3) (2015) (an aggravated misdemeanor).
[2] *See* Iowa Code § 719.1(1)(f) (a class "D" felony).

use of fire.[3]  He was sentenced accordingly.  Hattrup appeals.  He seeks a new trial due to the district court's exclusion of certain evidence he sought to admit.  He also seeks resentencing based on his claim that the district court considered unproven facts and improper factors.

## I.  Evidentiary Issues

Hattrup tried to introduce testimony from himself, his mother, and his girlfriend about improvement in his demeanor, affect, and general mental condition over the four-year period between the events leading to the charges and his trial.[4] The State objected on relevance grounds.  The court sustained the objection and excluded the evidence.  Hattrup claims this was error warranting a new trial.

As noted, Hattrup asserts an insanity defense.  By asserting an insanity defense, a defendant bears the burden to prove by a preponderance of the evidence that (1) the defendant suffered from a diseased or deranged condition of the mind, and (2) the condition made the defendant either incapable of knowing the nature and quality of the act the defendant was committing or was incapable

---

[3] *See* Iowa Code § 712.5 (a serious misdemeanor).

[4] In his briefs, Hattrup suggests he sought to admit evidence of "his behavior, demeanor, affect, and general mental health before," during, and after the events that resulted in the charges, but the district court excluded the evidence.  The record does not support this suggestion.  The record reveals that Hattrup sought to admit, and the district court excluded, only evidence of Hattrup's condition after the events leading to the charges.  To the extent Hattrup now claims error for the exclusion of evidence of Hattrup's condition before or during the events leading to the charges, we decline to address the claim.  The court did not exclude such evidence.  Further, Hattrup made no offer of proof and made no argument for admission of evidence about his condition before or during the event, so error was not preserved on that claim.  *See State v. Lange*, 531 N.W.2d 108, 114 (Iowa 1995) (requiring offers of proof to preserve error when evidence is excluded).  We limit our discussion to the preserved claim—the exclusion of evidence of Hattrup's condition since the events leading to the charges.

of distinguishing between right and wrong in relation to the act.[5]  In his brief,

Hattrup asserts evidence of his improved condition after the events leading to the

charges is relevant to his insanity defense in this way:

> [The evidence] is relevant because it is probative of his insanity:  his demeanor and actions during times of proper functioning—that is, after the successful treatment—are so different than his demeanor and actions on the day in question that it tends to make it more probable that he was suffering from a diseased or deranged condition at the time, and the condition was bad enough that he could not know the nature and quality of his actions or distinguish right from wrong.  This evidence is clearly relevant to the issue of his condition on the date of the events.

The district court did not find this argument persuasive and excluded the evidence

as irrelevant.

We review rulings on relevance of evidence for an abuse of discretion.[6]  A

district court abuses its discretion in ruling on relevance objections when it

"exercises its discretion 'on grounds or for reasons clearly untenable or to an extent

clearly unreasonable.'"[7]  The district court has broad discretion in making the call

whether evidence is relevant.[8]  Given this standard of review, it is not our task to

make an independent decision whether the excluded evidence was relevant.

Rather, our task is to decide whether the district court's exclusion of the evidence

as irrelevant was clearly untenable or clearly unreasonable.  Honoring the broad

discretion afforded to the district court, we conclude its decision to exclude the

evidence was not clearly untenable or clearly unreasonable.  The relevant date on

which Hattrup had the obligation to prove that he was legally insane was the date

---

[5] Iowa Code § 701.4.
[6] *State v. Tipton*, 897 N.W.2d 653, 691 (Iowa 2017).
[7] *Id.* (quoting *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003)).
[8] *State v. Thompson*, 954 N.W.2d 402, 407 (Iowa 2021).

that the events occurred that led to his charges. It was reasonable for the district court to conclude that evidence of Hattrup's mental condition and the manifestations of it during the four-year period after the relevant date did not have any tendency to make a fact of consequence more or less probable than it would be without the evidence.[9]

Before leaving this issue, we address two cases that Hattrup contends support his claim that events occurring after the alleged criminal acts are relevant: *State v. Wheeler*[10] and *State v. Venzke*.[11] Neither case is sufficiently on point to persuade us that it supports Hattrup's position. Neither case involves challenges to the admission or exclusion of evidence. Rather, the cases address the sufficiency of evidence supporting guilty findings that rejected insanity defenses.

In finding sufficient evidence in both cases, our court considered subsequent conduct. In *Wheeler*, we found adequate circumstantial evidence supporting the finding that Wheeler understood the nature of his acts and their wrongful nature because, after shooting and beating his father, he attempted to stage the house to look like a burglary, hid the gun, fled from Iowa under an assumed name, refused to divulge his whereabouts to his sister, and acknowledged that he knew he was in trouble.[12] In *Venzke*, we found adequate evidence to overcome Venzke's insanity defense based on evidence that, after

---

[9] *See* Iowa R. of Evid. 5.401 (defining evidence as relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action").

[10] 403 N.W.2d 58 (Iowa Ct. App. 1987), *overruled on other grounds by State v. Reeves*, 636 N.W.2d 22, 24–25 (Iowa 2001).

[11] 576 N.W.2d 382 (Iowa Ct. App. 1997).

[12] 403 N.W.2d at 62.

killing his wife, he ran toward the family's church, shed his blood-soaked clothes, and hid them.[13]  He also "told authorities he assumed he would either be raptured to heaven after the killing *or be put in jail*."[14]

Neither of these cases convinces us any error occurred here.  Here, as in *Wheeler* and *Venzke*, the State introduced evidence of Hattrup's conduct immediately after the crimes were committed—specifically, evidence that Hattrup discarded the shotgun, surrendered with his hands up, obeyed commands, and apologized to police.  That evidence was admitted to support the State's challenge to the second prong of Hattrup's insanity defense by suggesting that Hattrup knew the nature of his actions and he could distinguish between right and wrong near in time to when he committed the acts.  In contrast, the evidence Hattrup sought to introduce—improvement of his mental health with treatment over the course of four years following his actions—shed no meaningful light on any fact of consequence, including whether he was legally insane at the time of the acts.

We find no error in the court's exclusion of the evidence of Hattrup's post-event mental-health treatment and its effect on him.  Further, even if it had been error to exclude the evidence, the error would not warrant reversal.  Error in excluding evidence warrants reversal only when it affects a party's substantial rights.[15]  To determine whether substantial rights are affected in cases dealing with nonconstitutional error, such as this, we employ harmless error analysis.[16]  This

---

[13] 576 N.W.2d at 384.
[14] *Id.*
[15] *Eiesenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 19 (Iowa 2019); *see* Iowa R. Evid. 5.103(a).
[16] *Id.*

analysis presumes prejudice, and we "reverse unless the record affirmatively establishes otherwise."[17]   Upon our review of the record, we find it affirmatively establishes a lack of prejudice.   Both Hattrup's expert and the State's expert testified about the improvements Hattrup made regarding his mental health between the date of the incidents and trial.  The experts based their testimony and opinions, in part, on information provided by Hattrup, his mother, and his girlfriend. Given that the evidence Hattrup sought to introduce—testimony from him, his mother, and his girlfriend about his mental-health progress since the episode at issue—was already presented to the jury through the experts, any error in the exclusion of that evidence was harmless because it was cumulative.[18]

We find no reversible error in the district court's decision to exclude the evidence Hattrup sought to introduce.

## II.    Sentencing Issues

Hattrup also seeks resentencing.  He claims the district court considered unproven facts and improper factors in determining his sentence.  He targets three comments made by the sentencing judge.

Before addressing the challenged comments, we first address our review standards.  We give a sentencing judge significant latitude in choosing a sentence due to the discretionary nature of the sentencing decision and the respect afforded to the judge by the appellate process.[19]  Honoring that latitude, we will not reverse

---

[17] *Id.* (quoting *State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017)).
[18] *See State v. Windsor*, 316 N.W.2d 684, 688 (Iowa 1982) (finding the presumption of prejudice is overcome by showing that the same evidence came into the record at another time).
[19] *State v. Fetner*, 959 N.W.2d 129, 133–34 (Iowa 2021).

the sentencing decision unless there is an abuse of discretion or a defect in the sentencing procedure.[20]  If a sentence falls within "statutory limits, it 'is cloaked with a strong presumption in its favor.'"[21]  Hattrup does not claim the sentence he received exceeded statutory limits, so his sentence is cloaked with that strong, favorable presumption.  Even with this strong presumption, however, resentencing is required if the sentencing judge uses an improper consideration.[22]  Improper considerations include relying on unproven facts[23] and relying on the defendant's exercise of a constitutional right.[24]  Hattrup claims the district court considered both of these categories of improper factors.

### A.    Facts Relied Upon

Hattrup claims the district court improperly relied on multiple unproven facts. His first claim is based on the district court's statement, "You were basically chasing your girlfriend out of the house at the time that you went out there. Whether you were chasing her or not, she had just left the house and you followed her with the firearm."  Hattrup takes issue with the court's characterization of his conduct as chasing or following his girlfriend out of the house.  He claims his girlfriend's testimony negates this characterization, so it is not supported by the record.  We find the district court's statements supported by the record.  It is true

---

[20] *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020).

[21] *Fetner*, 959 N.W.2d. at 134 (quoting *State v. Boldon*, 954 N.W.2d 62, 73 (Iowa 2021)).

[22] *Id.*

[23] *See id.* at 135–36 (finding it improper for the sentencing judge to speculate that the defendant was working at a day care while under the influence of drugs when no evidence was presented that the defendant was doing so).

[24] *See State v. Nichols*, 247 N.W.2d 249, 255 (Iowa 1976) (noting that a sentencing judge cannot use a defendant's exercise of the defendant's constitutional rights against the defendant).

that Hattrup's girlfriend testified she went out the front door while Hattrup was still trying to force his way through the back door, and, when Hattrup exited the front door, she was on the front sidewalk "kind of in front of the empty lot" right next door. But Hattrup's successful entry through the back door followed by his appearance on the front porch with a shotgun was soon enough after his girlfriend's exit through the front door that he can be fairly characterized as following her out of the house.[25] The facts recited by the district court are supported by the record,[26] so the court committed no error in considering them.

Hattrup's second claim challenges the district court's statement, "Everyone said they saw the signs that it[27] was building, and yet they allowed this firearm to sit by your bed. They allowed you to have access to it. . . . [N]o one would stand up to you and say that weapon, you don't belong with that." Hattrup claims the record does not support this assertion and it involved speculation by the court. We believe Hattrup takes the comment out of context by reciting only part of the court's comments on this topic. To address his claim, we find it important to recite the entire comment:

> And I've weighed all of those things, and I've also included that your attorney talked about the support that you have, and it is wonderful. But there is something that very much concerns me about that support, and that is, everyone knew about your condition. They didn't know . . . the right name for it, but they knew that you could lose control. They knew that this was coming on. Everyone said they saw the signs that it was building, and yet they allowed this

---

[25] *See Follow*, Merriam-Webster, https://www.merriam-webster.com/dictionary/follow (last visited Jan. 9, 2022) (defining follow to include "to go, proceed, or come after" and "to go or come after a person or thing in place, time, or sequence").

[26] *See State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (finding that the standard of proof at the sentencing stage is by a preponderance of the evidence); *see also Fetner*, 959 N.W.2d at 135 (same).

[27] Presumably, "it" refers to Hattrup's mental-health issues or erratic behavior.

firearm to sit by your bed. They allowed you to have access to it. You knew it was coming, and you chose to have access to it. And—and frankly that—that's scary to this court that—that—that knowing that you chose to still have this dangerous weapon there, that no one would stand up to you and say that weapon, you don't belong with that. And because of that you put together all the pieces of a disaster. And actually it is simply because of the restraint of the Waterloo police department that we didn't have a total disaster.

Looking at the comments as a whole, it is clear they were in response to facts introduced by Hattrup at the sentencing hearing—specifically his claim of support from others. The court's responsive comments are supported by the record. The evidence at trial shows that the people of Hattrup's support system knew he possessed the gun and kept it in his bedroom. They also knew about his mental-health conditions and his explosive anger issues. In spite of Hattrup's volatile nature, the shotgun remained easily accessible by him in his bedroom. Given this evidence, coupled with the lack of any evidence that any members of Hattrup's support system tried to limit his access to the shotgun, it was fair for the district court to infer that no members of the support system tried to limit Hattrup's access to the gun, or, if they did, their efforts were unsuccessful. The record supports the district court's observations, and those observations were appropriate to respond to Hattrup's claim that his support system made him less of a danger.[28] We find no error in the court's comments.

## B.    Exercising Constitutional Rights

For his final sentencing challenge, Hattrup points to the above-quoted

---

[28] *See State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019) (listing factors a sentencing court can consider to include "the nature of the offense" and "the attending circumstances").

comments by the district court. Hattrup relies on *District of Columbia v. Heller*[29] to contend he has a right under the Second Amendment to the United States Constitution to keep the shotgun in his home for self-protection. He asserts the court's comments show that the court held his exercise of his Second Amendment rights against him and, as a result, the court considered an improper sentencing factor.

We acknowledge that a sentencing judge cannot use a defendant's exercise of the defendant's constitutional rights against the defendant.[30] But we disagree that the court did so here. *Heller* recognizes that Second Amendment rights are not unlimited: "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."[31] Our supreme court has recognized that, while "[t]he law may be unsettled as to the precise scope of what rights the Second Amendment protects," it is certain it does not protect using a firearm for criminal behavior.[32] In particular, the supreme court found there is no Second Amendment "right to be armed while interfering with lawful police activity" in violation of Iowa Code section 719.1—one of the crimes for which Hattrup was being sentenced.[33] As always, the district court's comments

---

[29] 554 U.S. 570 (2008).
[30] *See Nichols*, 247 N.W.2d at 255 (noting that a sentencing judge cannot use a defendant's exercise of the defendant's constitutional rights against the defendant).
[31] 554 U.S. at 626
[32] *State v. Brecunier*, 564 N.W.2d 365, 370 (Iowa 1997).
[33] *Id.*

must be put in context. Placed in proper context, we do not view the court's comments as holding it against Hattrup that he possessed a gun. Rather, the court viewed it as dangerous behavior that, knowing he could exhibit explosive behavior due to his mental-health condition, Hattrup continued to possess a gun that he then used to assault another person and that he possessed while interfering with lawful police activity. As Hattrup had no Second Amendment right to engage in criminal behavior with his firearm, the district court did not improperly consider Hattrup's action with that firearm in deciding on a proper sentence.

## III.    Conclusion

We find no error in the district court's exclusion of Hattrup's post-crime mental-health condition and treatment progress. Also, even if the evidence should not have been excluded, the evidence had already been presented to the jury through other witnesses, so any error was harmless.

As for sentencing, the district court did not consider any improper facts or factors in deciding on Hattrup's sentence. Accordingly, Hattrup is not entitled to resentencing.

**AFFIRMED.**